INTERNATIONAL & GREAT NORTHERN RAILWAY COMPANY v. JEFF RHOADES.

Decided June 7, 1899.

1. **Contributory Negligence—Pleading—Demurrer.**

A petition seeking damages for injuries received by a passenger in getting off a moving train is not subject to demurrer on the ground that it discloses contributory negligence on the part of plaintiff, where it shows that plaintiff was inexperienced, unable to judge of the danger, and relied on the directions of the conductor in getting off.

2. **Passenger—Contributory Negligence—Leaving Train in Motion.**

A passenger is not guilty of negligence per se in jumping from a moving train by the advice or order of the conductor or other authorized servant of the carrier in whose judgment he has a right to rely, if the danger of such act would not be apparent to a man of ordinary prudence.

3. **Same—Charge.**

See instructions held to properly present the law on the subject of contributory negligence of a passenger in getting off a moving train.

4. **Physical Injury as Evidence of Mental Suffering.**

Physical injuries may, in themselves, afford a basis for the submission of the issue as to mental anguish; it is not essential to a recovery for the latter that plaintiff prove an amount or sum of damages resulting.

5. **Argument—Interest of Witness—Employe Charged with Negligence.**

The incentive of a servant to exonerate himself from blame goes to his credit as a witness; it is legitimate to argue that the servant charged with negligence making his master liable would probably be discharged if he admitted it.

APPEAL from the County Court of Milam. Tried below before Hon. W. M. McGregor.

The sixth assignment of error, referred to in the opinion, was as follows: "The court erred in charging the jury that a passenger, in getting off a train, is required to use 'such care and diligence as a prudent. cautious, and competent person would use under similar circumstances,' the same being an erroneous statement of the law; the care that a prudent,

cautious, and competent person would exercise not being the equivalent of such care as an ordinarily prudent person would exercise under similar circumstances."

The other assignments. which were numerous, related to issues discussed in the opinion.

*S. R. Fisher,* for appellant.

*F. M. Adams,* for appellee.

FISHER, CHIEF JUSTICE.—This is an action by appellee Rhoades against the railway company for damages which he alleges were sustained by him through negligence of the defendant in failing to stop its train, on which he was a passenger, at the usual stopping place for passengers to alight from trains at Gause, on the night of April 26, 1898, which was the place that plaintiff desired to leave the train; and that by ringing the bell and blowing the whistle it caused the plaintiff to believe that the train had slowed up, when it had not, but was moving rapidly, it being too dark for the plaintiff to see how fast the train was moving; and while thus moving past the usual stopping place, the conductor commanded and directed the plaintiff to alight from the train, and plaintiff, not being able to see in the darkness, believing the train had slowed up, and being inexperienced in getting on and off moving trains, and relying upon the skill and care of the conductor and employes in charge of the train and operating the same, and in properly instructing him when and where to alight from the same, tried to get off at the time and place as directed by the conductor, and in so doing was injured, etc.

The defendant pleaded general and special demurrers, general denial, and alleged contributory negligence upon the part of plaintiff in jumping off the moving train in the darkness. Verdict and judgment were in plaintiff's favor for $250.

There was no error in overruling the demurrers. The petition upon its face does not allege facts showing that the appellee was guilty of contributory negligence in alighting from the train under the circumstances.

The court, on the question of liability of the railway company, instructed the jury as follows:

"If you believe from the evidence that the plaintiff was a passenger on one of the trains of defendant, and had paid his fare from Milano to Gause, and that he was promised by the conductor on said train that said train would be stopped at Gause for a time sufficiently long to allow plaintiff to alight from said train of cars, and when said train arrived at Gause it was not stopped at the usual place for stopping for passengers to alight from said cars, but that plaintiff was instructed by the conductor to alight from said train of cars, and that plaintiff was at the time ignorant of the danger of jumping from a moving train, but was made to believe by said conductor or other agent and employe of defendant that he could safely get off of said train of cars at the time, and did jump

from same and thereby injured himself, then you will find for the plaintiff such actual damages as the evidence shows will be a fair and reasonable compensation to plaintiff for the injuries sustained. A passenger riding on a train of cars is required to use such care and diligence in getting off the train as a prudent, cautious, and competent person would use under similar circumstances, and the want of such diligence on the part of plaintiff in alighting from said train of cars would prevent him from recovering a judgment against defendant."

There is evidence in the record which authorized the court to give the charge quoted. The effect of the verdict is that the jury gave credence to the facts in the record which show that the plaintiff was in the exercise of proper care at the time that he alighted from the train, and that he was inexperienced, and that he relied upon the instructions of the conductor that there was no danger, and that then and there was the proper time to leave the train.

If the train had been going at the rate of speed such that it was dangerous to leave it, and that it was so obvious that a prudent man would not encounter it, a passenger would not be justified in relying upon the advice and instructions of the conductor that he could alight with safety. But there is evidence in the record which would justify the conclusion that the train was not going at such a rate of speed that the danger in alighting therefrom was obvious to a man of inexperience in the movement of trains and in alighting from them.

The rule of law applicable to the facts consistent with the verdict is as follows: "A passenger is not guilty of negligence per se in jumping from a moving train by the advice or order of the conductor or other authorized servant of the carrier on whose opinion or judgment in the matter he has a right to rely, if the danger of such act would not be apparent to a man of ordinary prudence." Railway v. Schlaufler, 75 Ala., 142; Railway v. Winn, 93 Ala., 309; Railway v. Pierson, 49 Ark., 182; Railway v. Cantrell, 40 Am. Rep., 105; Railway v. McCurdy, 45 Ga., 288; McCasslin v. Railway, 93 Mich., 553; Railway v. Krouse, 30 Ohio St., 222; Railway v. Brown, 23 S. W. Rep., 618; Railway v. Bingham, 21 S. W. Rep., 569; Railway v. Viney, 30 S. W. Rep., 252.

At the request of the defendant the court gave the following instruction: "If from the evidence you believe that the plaintiff, in jumping or stepping from the moving train, sustained some or all of the hurts of which he complains, then he can not recover, even if you find that he was not, in so doing, guilty of negligence, unless you further find from the evidence that the agents and servants of defendant in charge of the train commanded, directed, and invited plaintiff to leave the train while in motion, and that plaintiff in so doing acted as would have acted a person of ordinary prudence. And in this connection, you are further instructed that a command, direction, or invitation given by an agent or servant of defendant to disembark from a moving train will not make defendant liable for resulting injuries, if a person of ordinary prudence would not have acted upon such command, direction, or invitation."

This charge, when considered in connection with the main charge of the court as quoted, correctly presents all of the issues arising from the evidence; and it was unnecessary for the court to further instruct the jury on the questions submitted in the special charges which were refused.

There was sufficient evidence of physical injuries upon which to base a submission of injury arising from mental suffering; and as to this item it was not essential, in order for the plaintiff to recover for damages sustained for mental anguish, that he should prove an amount or sum covering the injuries in this respect.

The language used by counsel in his argument, as complained of in the fourteenth assignment of error, is not ground for reversal.

We have carefully considered the questions raised in the sixth assignment of error, and those raised in the other assignments that are not specially noticed. We find no error in the record, and the judgment is affirmed.

Affirmed.

ON MOTION FOR REHEARING.

FISHER, Chief Justice.—The only question that we desire further to notice is that raised in appellant's bill of exceptions, which is as follows: "Be it remembered that upon the trial of the above numbered and entitled cause, and while plaintiff's counsel was making his closing argument to the jury, said counsel in discussing the motives of witnesses, over the objection, protest and exception of counsel for defendant seasonably made, stated that the testimony of the employes of the defendant who testified as witnesses herein must be considered in connection with the fact that railroad employes were under the necessity of testifying in favor of the defendant in order to retain their positions; that any testimony given by them unfavorable to defendant would result in their being dismissed or discharged from the employment. To which statement by counsel for plaintiff defendant's counsel then and there excepted, on the ground that said statement was improper and unsupported by anything in the record, and requested that counsel should be restrained and the jury instructed not to consider said statements; but the court declined to interrupt counsel for plaintiff, who proceeded with his argument along that line, but before proceeding, stated that he had not finished all he had started to say when interrupted by counsel, and that he wished all he had to say in that connection to appear in the bill. Counsel then proceeded to state that jurors were at liberty to conclude that such would be the result, from the common experience of mankind and motives of interest actuating witnesses; that 'each of you jurors know that if you had in your employ a servant or agent charged with certain duties, who should be guilty of a breach of the same, and you should be sued, and on the trial the said agent or servant should come upon the witness stand and admit that he had been careless and negligent and by his fault damage had been inflicted upon the parties suing you, you would instantly

discharge him for such negligence and wrongdoing,' and that interest would constrain said agent or servant to testify favorably; that it is human nature to put the best complexion on our own acts.

"To all of which action of counsel and to the action of the court in refusing to restrain him, the defendant, then and there in open court excepted, and now here prays that this its bill of exceptions be allowed, signed, and ordered filed as part of the record herein, which is accordingly done."

The relation of master and servant and the incentive of the servants to exonerate themselves from the blame, go to their credit as witnesses. 29 Am. and Eng. Enc. of Law, p. 771.

We think it permissible for counsel, in argument to the court or jury on the facts of the case, to comment on what may be the possible or probable consequence of the testimony of any given witness, as affecting the witness personally. The servants whose negligence is alleged to have occasioned the injury certainly have an interest in the controversy to the extent of shielding themselves from the consequences that might result if it were known that they were really guilty, and that their master was liable to pecuniary punishment by reason of their wrongful conduct. In such a case, the inference is reasonable that one of the possible or probable consequences is that the master would not desire to retain the servant in his employment if it were known that he was guilty of conduct hurtful to the interests of the master; and especially in a case of this character, where the servant not only owed the duty to the master but to the public as well. Of the master in his relation to the public, who must perform his acts through servants, it could reasonably be expected that, on the score of humanity and the duty that he owed to the public, he would likely dispense with the services of a servant whose conduct is of a character that indicates that he could not be safely intrusted with the performance of such duties. We adhere to the original ruling made upon this subject, and overrule the motion for rehearing.

*Motion overruled.*

Delivered October 11, 1899.