[No. 4950.]

## The Hotchkiss Mt. Mining and Reduction Company v. Bruner.

1. **Master and Servant—Death of Servant—Negligence—Contributory Negligence—Evidence.**

In an action for the death of an employee killed while descending a man-way in a mine, evidence reviewed and held sufficient to support a finding that decedent was killed by falling rock because of the negligence of the mine owner to properly timber the way; and to justify a finding that deceased was not guilty of contributory negligence.—P. 308.

2. **Same.**

In an action for the death of an employee caused by alleged negligence of employer, it is not necessary to show by eye-witnesses that decedent came to his death because of the defendant's negligence and that deceased was free from contributory negligence, since these matters may be proven by showing circumstances from which their existence may fairly and logically be inferred.—P. 309.

3. **Same—Admissibility of Evidence.**

In an action for the death of an employee struck by falling rock while descending a man-way in a mine, the testimony showed that the employer knew that rock was frequently slipping and falling down the way, and that from time to time after rock had fallen it would re-timber the places which appeared to be most dangerous. Held, that evidence of the proper manner of timbering the way to make it reasonably safe is admissible to show that the employer was negligent in failing to use ordinary care to make the place reasonably safe.—P. 309.

4. **Same.**

In an action for the death of an employee struck by falling rock while descending a man-way in a mine, evidence of a previous accident, occurring shortly before the accident resulting in

decedent's death, is admissible to show knowledge on the part of the employer that the existing conditions in the way were dangerous.—P. 310.

5.  **Practice in Civil Actions—Master and Servant—Death of Servant—Instructions—Assumption of Risk.**

In an action for the death of an employee struck by falling rock while he was descending a man-way in a mine, the evidence under every reasonable theory showed that the employer was negligent, and the court correctly charged as to the degree of care required, and properly submitted the issue of contributory negligence and assumption of risk. Held, that a charge that, if the employer knew, or by ordinary care could have known, that the way was unsafe because not properly timbered to prevent rocks from falling, he was liable, is not erroneous as assuming that the way was unsafe and not properly timbered, and that no timbering was proper unless it absolutely prevented rock from falling.—P. 310.

*Appeal from the District Court of Hinsdale County.*
*Hon. Theron Stevens, Judge.*

Action by Rosa L. Bruner against The Hotchkiss Mt. Mining and Reduction Company. From a judgment for plaintiff, defendant appeals.
*Affirmed.*

Mr. Ralph Hartzell and Mr. William E. Hutton, for appellant.

Mr. Albert L. Moses and Messrs. Richardson & Hawkins, for appellee.

Mr. Justice Bailey delivered the opinion of the court:

The appellant operated a certain mining property known as the Black Crook, located in Hinsdale county. At the time of the accident which gave rise to this action the Black Crook property was being worked through an upraise extending from the Fleece tunnel. The upraise had been driven about

three hundred feet and ladders ran from the tunnel
level to the top of the upraise, the first ladder start-
ing on the tunnel level being a short one, eight or ten
feet long.  This led to a landing and from this land-
ing longer ladders led to the top of the upraise.
This upraise was divided into two compartments by
a partition.  The left-hand compartment was a dirt-
chute and the right-hand one was the bucket and
ladder-day.  In order to reach the breast of the up-
raise it was necessary to ascend the ladders in the
ladder-way.

About 6 o'clock on the night of October 21st,
1902, Arthur Bruner and his brother, Edward
Bruner, commenced working for the appellant in this
Black Crook mine.  They ascended the ladder-way
to the place designated for their employment.  This
was the first time that either of them had ever en-
tered this mine.  At the close of the shift which they
were working, they descended the ladder-way, Ed-
ward going first and Arthur following so closely that
his brother cautioned him from time to time to avoid
stepping upon his fingers.  Just as Edward had
reached the lower ladder extending from the tunnel
to the platform, his brother being but a few feet
above him, rocks were heard falling down the up-
raise:  Arthur immediately called to his brother to
"look out for rocks."  Edward then jumped to the
ground and called to Arthur asking if he were hurt.
Receiving no answer, he re-ascended to the top of the
platform and there found Arthur lying dead with
his feet at the foot of the ladder.  His head had been
crushed.

The evidence further discloses that this upraise
had been driven through soft, veinous matter which,
because of the action of the water upon it, frequently
sloughed off and fell down the man-way, the masses
of rock falling varying from ten to one hundred

pounds in weight. Shortly before the accident involved in this action, other employees had been injured by falling rock in this man-way. The night before the accident one of the co-employees of the Bruners observed rock falling down the man-way. The evidence tended to show that the falling of rock in this man-way could have been prevented had the upraise been properly timbered. Upon this state of facts the appellee, who was the mother of Arthur Bruner, deceased, and who had been supported by him, he being a single man, brought this action and recovered judgment in the sum of four thousand dollars.

It is contended that the judgment should be reversed for the reason that there was no direct proof that the young man met his death because of falling rock. Some of the hair and a portion of the skull of the man was found sticking upon the wall about four feet above the platform, and one of the employees of appellant made an examination of the rock lying upon the platform and of the walls of the upraise and failed to find any pieces of rock upon the platform which had the appearance of having recently fallen, and failed to find any place along the walls of the upraise which indicated that rock had recently slipped off. The rock upon the platform was covered with blood which had come from the young man's head, and the witness stated that he did not examine every angle of the broken pieces of rock to determine whether or not they had been freshly broken. The appellant contends that it is possible the deceased might have slipped from the ladder and fallen, striking his head upon the wall and thus causing the injury which produced his death, and that in the absence of direct proof of the death having been occasioned by falling rock, the verdict of the jury should be set aside because it is based upon a mere guess.

This matter was fairly submitted to the jury by the court upon proper instructions and its verdict was against the appellant and, as has already been stated, there was evidence which was uncontradicted that rock had fallen down this man-way as recently as the night before Bruner was killed.

In actions of this character it is not necessary to show by eye-witnesses that the deceased came to his death because of negligence on the part of the defendant and freedom from negligence by the deceased. These matters may be proven by showing circumstances from which their existence may fairly and logically be inferred.—*Potter v. N. Y. Cen. & H. R. R. Co.,* 61 N. Y. Sup. Ct. 351; Black's Law and Prac. in Accident Cases, § 175, and cases there cited; *Hopkinson v. Knapp & S. Co.,* 92 Ia. 328; *Kelly v. H. & S. J. R. R. Co.,* 70 Mo. 604.

But in this case the evidence is so conclusive that it is difficult to imagine how any other verdict would have been possible. Rock was heard falling down the upraise, and immediately the man fell dead with a wound such as would result from falling rock. He was within two or three feet of the platform at the time that the rock was heard falling, and it is impossible to believe that he accidentally slipped from the ladder and fell with such force that his head was crushed against the wall of the man-way. The verdict is amply supported by the testimony.

It is contended that the court erred in the admission of testimony over defendant's objection as to the proper manner in which the upraise should be timbered in order to make it reasonably safe. The testimony shows clearly that the defendant had knowledge of the fact that rock was frequently sloughing off and falling down this man-way, and from time to time after the rock had fallen down it would re-timber the places which appeared to be

the most dangerous. This testimony was admissible for the purpose of showing that if the defendant knew, or, in the exercise of ordinary care, could have known, of the existence of danger, it further neglected to use ordinary care to make the place reasonably safe.—*Williams v. Sleepy Hollow Mining Co.,* 37 Colo. .62.

It is also contended that the court erred in admitting testimony of a previous accident and one which occurred shortly before the one involved. This testimony was admissible for the purpose of showing knowledge on the part of the defendant that the existing conditions were dangerous.—*Salen Stone and Lime Co. v. Griffin,* 139 Ind. 141; *Byard v. Palace Cloth. Co.,* 85 Minn. 363; *Stock v. La Boutiller,* 41 N. Y. Supp. 649; *Baker v. Hogey,* 177 Pa. St. 128.

In a supplemental brief filed at the time of the oral argument, it is contended for the first time that the court erred in giving instruction No. 2, which is as follows:

"The court instructs the jury that if you find from the evidence that the defendant company knew, or in the exercise of ordinary care, could have known, that the man-way in the upraise in its mine was in an unsafe condition by reason of not being properly timbered to prevent rocks from falling, and that the death of plaintiff's son was the natural or approximate result thereof and resulted from a rock striking him and killing him, then your verdict should be for the plaintiff."

It is contended that this instruction assumes that the man-way was in an unsafe condition; that it assumes that it was not properly timbered; and that it assumes that no timbering is proper unless it absolutely prevents rock from falling. A careful reading of this instruction does not lead us to the conclusion that the contention of appellant is correct.

The instruction is that if the defendant knew, or, in the exercise of ordinary care, could have known that these things existed, then it was liable. If they did not exist, the defendant company could not have known by any degree of care that they did. The instructions, taken as a whole, are very liberal toward the defendant. The jury was fully instructed as to the degree of care required. The question of the negligence of the defendant, of the contributory negligence of the plaintiff, and of the assumption of the risk by the plaintiff, was fairly submitted. Even though this instruction might be considered technically defective, the conditions existing in this man-way at the time of the death of the young man were such that it is difficult to imagine how the defendant could have been prejudiced. This company sent the two young men into a veritable death-trap without giving them one word of warning as to the dangerous conditions. The rule that the employer must furnish an ordinarily safe place in which the employee is to work was so flagrantly violated in this case as to leave defendant in no position to complain. Under any conceivable theory, either of fact or of law, defendant was guilty of the grossest negligence, and as a consequence must pay the penalty, in so far as money can be made to pay for the life of a strong, sober young man and dutiful son, such as the record discloses was the character of the deceased.

Finding no prejudicial error in the record, the judgment of the district court will be affirmed.

*Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GODDARD concur.