Merrimack,
May 6, 1913.

### Ross W. Cate, *Adm'r*, *v.* Boston & Maine Railroad.

Where an inexperienced fireman is injured by collision with a bridge while undertaking to keep a lookout from the gangway of a locomotive of a wider type than those upon which he had previously worked, the failure of his employers to notify him of the dangers incident to a situation which they ought reasonably to have foreseen warrants a finding of negligence on their part.

Certain evidence deemed sufficient to warrant the findings that an inexperienced fireman was injured while performing his duty in a manner which his employers ought reasonably to have anticipated, and that he was not chargeable with knowledge or appreciation of the risk incident to his method of doing the work·

CASE, for negligently causing the death of the plaintiff's intestate, Solon W. Cate. Trial by jury and verdict for the plaintiff. Transferred from the October term, 1912, of the superior court by *Mitchell*, J., on the defendants' exceptions to the denial of motions for a nonsuit and the direction of a verdict in their favor.

Cate was employed by the defendants as a fireman.   He worked in that capacity during the summer and early fall of 1911, and from February 4, 1912, until his death ten days later.   During the latter period of service he was assigned to locomotives of the Pacific type, which are a foot wider than those he had previously worked upon. On the afternoon of February 14, Cate was at work upon the locomotive which drew the Canadian Pacific express train from Concord to Woodsville.   This train was somewhat late in leaving Concord and was further delayed by a slower train ahead.   The express was flagged at Swansboro and picked up the flagman from the mail train, who climbed into the cab and occupied the fireman's seat by Cate's invitation, in accordance with the usual practice.

About two and a half miles north of Swansboro, the train ran through a covered bridge over Baker river.   The last time the engineer saw Cate on the locomotive was when the train was about 300 feet south of the bridge, and he was then in the act of firing;  the last time the flagman noticed him, he stood in front of the door to the fire-box and was looking at the steam gauge.   When the train was about half a mile north of the bridge, the flagman became aware of Cate's absence and called the engineer's attention to the fact. The train was thereupon stopped and run back to the bridge, where Cate's remains were found.   The evidence tended to prove that his skull was crushed by striking the corner board at the south end of the bridge, upon the left side of the track.   The body was found about eighty-four feet from the southerly end of the bridge.

Prior to February 14, Cate had made twenty-six trips through the bridge where he was killed—twenty of them during the summer of 1911 and six in February, 1912.   On the day of his death the train ran through the bridge at a speed of forty miles an hour.   The plaintiff claimed that Cate was leaning out of the gangway between the engine and tender, in the performance of his duty of keeping a lookout ahead, when he was struck by the bridge.   He offered evidence tending to prove that there was a clearance of only twenty-one inches between the cab of the locomotive and the end of the bridge, and contended that the defendants were negligent in not warning Cate of the danger incident to running through the bridge with a wide locomotive.

*Martin & Howe* and *John M. Stark* (*Mr. Howe* orally), for the plaintiff.

*Streeter, Demond, Woodworth & Sulloway* and *William W. Thayer* (*Mr. Demond* orally), for the defendants.

YOUNG, J. The defendants base their contention that the court erred in denying their motion for a directed verdict on three propositions: There was no evidence (1) that they were in fault, or (2) that their fault caused the accident, and (3) it conclusively appears that the deceased assumed the risk of his injury.

1. If the defendants are free from fault in so far as the engine and bridge are concerned, that is not the end of this case if it can be found that the ordinary man would not have run such an engine, with such a fireman, through such a bridge, at a speed of forty miles an hour, without notifying him that it was ·dangerous to lean out of the gangway. The defendants knew there might be a flagman in the fireman's seat and that a fireman with no more experience than Cate appears to have had might undertake to keep his lookout by leaning out of the gangway. They also knew there was but twenty-one inches between the cab and the bridge when there was no sway to the engine. Consequently it can be found that they ought to have known this distance might be very materially less than twenty-one inches when the engine was running as fast as this one was usually run through this bridge; for they concede that all engines sway more or less when in motion. It can be found, therefore, that the defendants either knew or ought to have known (1) that Cate might be leaning out of the gangway of the engine when it entered this bridge and (2) that that was a dangerous thing to do. In any view of the law, it was the defendants' duty to notify him of all the dangers incident to doing what he was employed to do, of which they did and he did not know. Consequently it can be· found that they were in fault if he neither knew nor was in fault for not knowing that it was dangerous to lean out of the gangway when passing through this bridge.

2. No one saw the accident, and the defendants contend that it is at least as probable that the condition which caused it was one for which they were not responsible, as that it was one for which they were responsible. The evidence, however, does not sustain their contention. The location of the wound on the deceased's head, the position of his body when found, the place where it was found, the marks on the bridge, the position of the other occupants of the cab, the work Cate was doing when last seen, and the work it was his duty to do, all point to the conclusion that he was killed while leaning out of the gangway in order to keep a lookout for danger. In other words, it can be found that he was killed while doing what he was employed to do, in the way the defendants ought to have

anticipated that he might do it. If, therefore, it was their duty to notify him of this danger, it can be found that their failure to perform it was the legal cause of his injury.

3. It can serve no useful purpose to consider whether servants who are engaged in interstate commerce do or do not assume the risk of injuries caused by their master's failure to maintain his instrumentalities in the condition in which the ordinary man would have maintained them; for the defendants concede that they do not assume the risk of such injuries unless they know of the condition which causes them and fully appreciate the risk incident thereto. If, therefore, it can be found that Cate did not appreciate the risk incident to leaning out of the gangway of one of the wide engines when riding through this bridge, the defendants' exception must be overruled; for, as we have seen, in that case it can be found that the defendants were in fault and that their fault caused the accident. The engineer who was running this engine testified that he did not think it was a great deal wider than the other engines. He had been running wide engines for several months and the narrower ones for several years, and was much more familiar with both classes of engines than Cate could be expected to be. Consequently it cannot be said that Cate either knew or ought to have known that this engine was much, if any, wider than those he fired the previous summer. In short, the evidence warrants the conclusion that there was nothing about this engine calculated to call an inexperienced man's attention to the fact that it was so much wider than the other engines as to make it dangerous to lean out of the gangway when passing through this bridge.

If one of the defendants' engineers told Cate a day or two before the accident that he must not lean out of the gangway of this engine, it does not necessarily change the result. That warning was given in the Plymouth yard; and Cate may have thought from what was said, when taken in connection with the place where it was said, that the danger of which he was warned was that peculiar to riding through that yard on any engine—not that peculiar to the width of the engine on which he was then riding. The interpretation of this evidence and the credibility of the witness was for the jury. It was therefore competent for it to find that Cate neither knew nor was in fault for not knowing that it was dangerous to lean out of the gangway of this engine when passing through this bridge.

*Exceptions overruled.*

All concurred.