[No. 7559]

## CATLETT ET AL. V. COLORADO & SOUTHERN RAILWAY COMPANY.

1. RAILROAD COMPANY—*Duty at Public Crossing*—It is the unquestionable duty of those operating a locomotive to keep a lookout in passing the streets of a village or town, or other place where, with the acquiescence of the railway company the public have for a long time been accustomed to cross its tracks. If a person, being upon the track, at such a place is injured or killed by the train, by reason of a neglect to keep such outlook, and so discover him in time to avoid the accident, the railway company is not exonerated by the exercise of all diligence on the part of the engineer and fireman, after the person is seen.

Even though the person injured or killed is upon the track by reason of his intoxication, the company is still liable, if, by due diligence, his presence might have been discovered in time to have stopped the train and removed him.

And this, even though such person was a mere trespasser, and where he had no right to be.

2. NEGLIGENCE—*Question for the Jury*—Where upon the testimony different minds may honestly draw different conclusions, the question of negligence, or contributory negligence, is for the jury.

The evidence examined, and *held* that the court below erred in directing the verdict.

3. ——*Pleading*—The acts or omissions constituting the negligence complained of must be stated, but it is not important that any conclusion that the matter so alleged should be stated; nor that the complaint should assume to state the degree of the negligence charged.

4. CONTRIBUTORY NEGLIGENCE—*Plaintiff Recovers Notwithstanding*, when defendant knows of his peril, or by due diligence would have known of it, in time to avoid doing him injury.

5. TRIAL—*Pleading and Evidence—Variance*—Specific omissions constituting simple negligence being charged, they were characterized in the complaint as "wilful and wanton." *Held*, that these epithets being the expression of a mere conclusion should be disregarded, and that upon proof of simple negligence plaintiff was entitled to recover.

*Error to Larimer District Court.*—Hon. JAMES OWEN, Judge.

Mr. O. L. DINES and Mr. L. D. THOMASON, for plaintiff in error.

Mr. E. E. WHITTED and Mr. THOMAS R. WOODROW, for defendant in error.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an action by the plaintiffs in error to recover in damages for the loss of their son William F. Catlett, who was run over and killed by the train of defendant in error, on the evening of October 19th, 1909.

At the close of plaintiffs' testimony the court directed a verdict for the defendant and dismissed the action.

The accident occurred within the limits of the city of Loveland. Defendant's tracks run through the city in a northerly and southerly direction. The train had stopped at the depot and was proceeding northward, intending to take on coal at the company's coal chutes, located at a point about 2,400 feet north of the depot. The depot grounds are bounded on the north by 5th street, which the track crosses at approximately right angles, as it does 6th, 7th, 8th and 10th streets, north of 5th street, and following in the order named.

There is no street crossing between 8th and 10th streets, and the distance between these streets is about 600 feet. The length of the other blocks is about 300 feet. At a point about 200 feet south of 10th street a spur connects with the main track, and runs in an easterly direction to the sugar factory. This is known as the "Sugar Road."

There were approximately three hundred and fifty persons working at the sugar factory at the time, and about fifty of these lived on the west side of defendant's tracks. These persons were and had been, for some years, accustomed to walk on a path along the "Sugar Road," to and from their homes, and which path crossed

the defendant's tracks at the frog where the Sugar road joined the main track. It was at this point that Catlett was killed, while lying prostrate between the rails of the main line, and over which rails the train passed.

The allegations of the complaint as to negligence, as the case was finally tried, were as follows:

"The said defendant company, by and through its servants and employes, on the night of October 19th, 1909, with wanton and willful negligence, drove and ran its locomotive and train of cars upon and over the body of the said William F. Catlett, while he was lying prostrate and helpless upon the track as hereinbefore stated, thereby severing his body in twain and producing almost instant death.

"That the engineer or fireman, in charge of said locomotive, by the exercise of slight care, could have seen the said William F. Catlett upon the railroad track in time to stop the said locomotive and train and avert his death.

"That at the time said William Catlett was so struck and killed, the said locomotive and train were running at an unreasonable and dangerous rate of speed, to-wit: at the rate of twenty miles per hour."

The defendant's answer denied negligence and pleaded contributory negligence on the part of the deceased.

The only eye witness to the accident was the fireman on the engine of the train which struck Catlett. The tracks from the depot to the coal chutes were straight, slightly up grade, and with an entirely unobstructed view between these points. The time of the accident was between six-forty and seven o'clock in the evening. The train was known as the regular six-forty train. It was the time of day when the employes of the sugar factory

who lived on the west side of defendant's tracks were accustomed to cross the tracks along the path before mentioned, in returning to their homes after the day's work.

Just how or why Catlett came to be lying prostrate on the tracks is unknown. Witness Osborne, an employe of the sugar factory, and who lived on the west side of the defendant's tracks, testified that he was returning to his home and that he overtook Catlett, who was walking along the path on the Sugar road in the direction of his home, at a point where 10th street crosses the sugar track, and about three hundred feet from where the Sugar road connects with the main line, and that within ten or fifteen minutes thereafter he saw Catlett's dead body. He says:

"I was on my way home from the sugar factory where I worked, and I passed Will Catlett at the 10th street crossing. He spoke to me. He said 'Hello,' and I said 'Hello.' I said to him, 'If you are going with me you will have to hurry.' He made no reply to that, I saw nothing out of the way with him. He could walk straight and talk straight, and did not exhibit any indication of intoxication. If he had been intoxicated to any appreciable extent, I would have observed it. I did not discover any evidence of intoxication."

There is no testimony in the record showing that any other person saw him that day before the accident, though he was living with his parents at their home west of the tracks.

The absence of testimony on the part of the plaintiff in this regard may be explained by the following proceedings as disclosed by the record:

Q. "What sort of a headlight was carried by that train, or was at that time? A. An electric headlight.

"*The Court:* They admit that in their answer; admit the train, admit running over the man. The only question to be determined is what the facts and circumstances were in regard to his being on the track, and what degree of care they exercised.

"*Mr. Whitted:* All of this is immaterial. It is admitted by the pleadings that this man had fallen upon the track and was lying there at the time; how he got there is irrelevant and immaterial.

"*The Court:* In the statement made this morning, they admitted those matters.

"*Mr. Whitted:* We don't make any point on that."

It will be seen from this that the defendant proceeded with the trial of the case upon this theory and upon which its counsel insisted; that is to say, it was sufficient for plaintiff to show that Catlett was on the track, in his then helpless condition, and hence how he got there was irrelevant and immaterial, and that the question was solely one of the alleged negligence of defendant company. Apparently acting upon this theory of the defendant, which seems to have been adopted by the trial court, the plaintiffs offered no further evidence upon this point.

The engine of the train was equipped with an electric headlight. As to the power of this headlight and as applied to the track in question, the witness Osborne testified in substance:

"I could see from the depot to the coal chutes by the headlight, four or five blocks. Prior to the time Catlett was killed I had observed the distance in which objects could be seen on the track, by aid of the headlight. I observed it in crossing the track, the light shone so bright. An object on the track as big as a man could be seen, but whether you could distinguish it was a man or not, I don't know. I could distinguish an object much smaller than a man."

Another witness testified that on the night of the accident, it was quite light for three or four blocks, and that if a person was looking along the track he could see an object the size of the body of a man for a distance of six or eight hundred feet.

Martindale, another witness, testified:

"When I first got down there I looked up the track to see what had stopped them. I could see anything crossing the track between there and the coal chutes—I could not see a bug, but I could see a cat or a dog, anything of that kind could have been seen between the engine and the coal chutes."

This distance was about nine hundred feet.

The testimony shows that there were dwellings on both sides of the track at the point where Catlett was killed.

The defendant's fireman on the train at the time of the accident, testified in part as follows:

"On the night Catlett was killed, the traveling engineer, George Gray, was on the engine with the engineer and myself. I could not say whether the engineer and Mr. Gray were holding any conversation at the time we pulled out from the depot in Loveland. Immediately upon pulling out from the depot in Loveland I put in fire. It is one of my duties in passing through the limits of a town or city to watch the street crossings. When we left the depot in Loveland, I got down to put in the fire and watched the first crossing, which would be 5th street crossing, then after I got over that, I put in another fire and got over the next crossing, which would be 6th street, then I lit a torch and was going to take coal up there and had a coal ticket in my hat-band, and when I went to get the ticket it blew away, and just then I looked and saw a body on the track, but I could not tell what

it was for a second or two until I got within 75 or 100 feet of it when I recognized it was a man by a hat lying inside the track.

"Q. So you were at the 6th street crossing when you first observed he was on the track? A. I could not say what crossing.

"Q. It was the second crossing after you left the depot going north, was it nót? A. I was over the second crossing.

"Q. Was it the third crossing then? A. I could not say what crossing it was.

"Q. Do you mean to say that it was not true that after you got over the second crossing you felt for your coal ticket in your hat-band, that you looked up and saw the body on the track and could not tell what it was for a second or two? A. Yes, I might have went over another crossing or two before that time.

"Q. How many blocks away were you when you discovered it to be a man's hat? A. About 75 or 100 feet I should judge.

"Q. You say you kept a lookout for the crossings? A. I did in a way.

"Q. What do you mean by that? A. I was looking out for any moving objects or anything moving along the track.

"Q. Was there anything to prevent you, when keeping a lookout at the 8th street crossing, seeing this man on the railroad track? A. If he had been a man walking or moving about, probably I would have noticed him.

"Q. Was there anything to prevent your seeing that distance of a little over a block? A. A man lying on the track, if he was lying in a certain position, I might have seen him, but lying in the position he was, I could not tell what it was.

"Q. Lying in any position what was there to prevent you seeing a man on the track at a distance of a little over a block? A. The position the man was in—I could not distinguish what it was, I supposed—

"Q. What sort of a headlight was that engine equipped with? A. An electric headlight.

"Q. State to the jury whether or not you, as fireman of that engine, could not see up the track for a distance of more than two blocks by that headlight, see plainly? A. Well, I could see certain objects, a man could not—

"Q. Isn't it a fact if you had been keeping a lookout that night you could have seen a body much smaller than a man lying on the track?

"*Mr. Whitted:* Object to that.

"*The Court:* Objection sustained.

"Q. State to the jury how far you could have seen an object smaller than a man, by the headlight, if you had been keeping a lookout on the track? A. I don't suppose I could have seen him any sooner than I did.

"*Witness continues:* When I discovered it was a man, I hollered to the engineer to 'plug her.' I did not see what the engineer was doing at the time I called to him. The engineer said he was looking back toward the tender to see how much coal we would probably need. The track is up-grade from the depot to the coal chutes. After I shouted to the engineer he plugged her. 'Plugged her' is a kind of language to stop in an emergency. As soon as I shouted to the engineer, the air-brakes were thrown into emergency. The train stopped in as short possible time as it could be. After we run over this man, I got down and went back to where he was. I discovered signs of life, he was gasping, the engine, baggage

car, and first trucks of the combination car passed over his body. That would be about 150 feet."

The rule of law well settled by this court in negligence cases as to the right or duty of the court to determine the question of negligence as a matter of law, is that the court may determine the question only in cases where the testimony will allow no other inference; but that where the question of negligence or contributory negligence depends on a state of facts from which different minds may honestly draw different conclusions on that issue, the question must be submitted to the jury for determination, under proper instructions.—*Nichols v. C., B. & Q. Ry. Co.,* 44 Colo. 501, 98 Pac. 808; *D. & R. G. Ry. Co. v. Spencer,* 27 Colo. 313, 61 Pac. 606, 51 L. R. A. 121; *Lord v. Pueblo S. & R. Co.,* 12 Colo. 390, 21 Pac. 148; *Colorado Central Ry. Co. v. Martin,* 7 Colo. 592, 4 Pac. 1118.

Under the state of facts presented, and in the absence of conflicting testimony, the jury might fairly conclude that the train was running through, and crossing the streets of a city where many people lived on both sides of its tracks; that Catlett was struck and killed while he lay prostrate between the rails of the track upon which the train was running, at a point where a well used path crosses the track; that Catlett at the time he came upon the track was on his way home, walking along the path, and when no train was approaching; that Catlett was duly sober and that while, how or why, he was overcome is not known, yet that this was due to no act or fault of his own; that the crossing was not upon a street, but upon a path which defendant had suffered to be used for several years, and which it knew to be used daily by a large number of employes of the sugar factory, and at substantially the time of the day when Catlett was killed; that the engine was equipped with a powerful headlight

by which the engineer or fireman could have easily seen the body of a man upon the track for a distance of at least six to eight hundred feet; that the train could have been stopped and was in this case stopped, within 150 feet, after the emergency was applied; that the engineer if he saw the man at all, did not act until commanded by the fireman, at a point by the latter estimated to be from 75 to 100 feet from the body; that the fireman did not call to the engineer until some indefinite time after seeing the body, nor until he recognized a man's hat near the body; that by the exercise of reasonable care the engineer or fireman or both, could have seen the body and have stopped the train in sufficient time to have avoided the accident, and that the failure to exercise such care was the proximate cause of the accident.

It is contended by the defendant company, that because of the use of the term "willful and wanton negligence," in the complaint, the plaintiff is held to proof of willful and wanton negligence on the part of defendant's agents.

It may be said to be the almost universal rule that the acts constituting negligence must be sufficiently alleged in the complaint, and that it is not important that any conclusion that such acts constitute negligence shall be pleaded. Also that the complaint need not allege the degree of negligence for the reason that this is a matter of proof.—14 Am. & Eng. P. & P. 338; *Nall v. Taylor,* 247 Ill. 580, 93 N. E. 359.

Therefore the characterization in the complaint of an act as having been done "recklessly and willfully" is mere surplusage.—*Moore v. Drayton,* 16 N. Y. Supp. 723; *Highland Air Ry. Co. v. Sampson,* 112 Ala. 425, 20 South. 566; *McCord v. High,* 24 Iowa 336; *Taylor v. Holman,* 45 Mo. 371.

The averment in this case, where two specific acts of

simple negligence are alleged, that these acts constitute
"willful and wanton negligence," is a mere conclusion
and may be wholly disregarded.—*Southern Ry. Co. v.
Prather,* 119 Ala. 588, 24 South. 836, 72 Am. St. Rep. 949;
*Southern Ry. Co. v. McNeeley,* 44 Ind. App. 126, 88 N. E.
710, 714; *Western Brewery Co. v. Meredith,* 166 Ill. 306,
46 N. E. 720.

It may be that the testimony in this case discloses
such willful disregard of duty upon the part of the de-
fendant's fireman and engineer as to constitute wanton
negligence, a question which we do not determine for the
reason that under our view, either of the acts of negli-
gence charged, if proven, entitle the plaintiffs to recover.

Counsel for defendant further contend that there is
no evidence of misconduct, after Catlett was seen on the
track and his danger apprehended by the railroad em-
ployes, and that for such reason plaintiffs cannot recover,
and cite *Posten v. Ry. Co.* 11 Colo. App. 187, 53 Pac. 391,
and *Montgomery v. Ry. Co.,* 50 Colo. 214, 114 Pac. 659,
among other authorities to sustain this contention. We
find no language in either of the Colorado cases cited,
that can be said to support such a proposition.

Such a rule would absolve carriers entirely from the
duty to exercise ordinary care. In this case if those in
charge of defendant's engine had neglected to keep a
lookout, an unquestionable duty, and had not for such
reason, seen the body of Catlett at all, until after the en-
gine had struck him, it cannot be said that defendant was
not liable, because there was no showing of misconduct,
after he was seen by the fireman or engineer.

This contention was made and fully considered by
this court, and the doctrine denied, in the case of *Nichols
v. C., B. & Q. Ry. Co., supra.* The court expressly de-
clined to follow cases cited, to the contrary.

Counsel proceed upon the theory that Catlett was

drunk, and cite a line of cases wherein the injured persons were drunk and either laid down or fell down in a drunken stupor, or by reason of such drunkenness fell asleep on the track, and wherein it has been held that such conduct is the proximate cause of the injury in the particular case. But this is not that kind of a case. There is no testimony that reasonably tends to show that Catlett was drunk, while there is positive testimony to the contrary, and even if this was an open question, and material, it is one of fact for the jury alone to determine.

The case as presented is one more akin to that of a child, not yet arrived at the years of discretion, and where injured or killed by a similar accident. But if it be conceded that Catlett's situation was produced by intoxication and that for such reason he was on the track through his own negligence, yet if defendant's fireman in this case, did see the body, or by the exercise of reasonable care could have seen the body in time to have avoided the accident, then under the doctrine of Last Clear Chance as declared by this court, the defendant was guilty of actionable negligence. The fireman was not justified, after seeing the object lying on the track, in waiting until he could distinguish it to be the body of a man. It was sufficient to constitute negligence, if under all the circumstances there was reasonable cause to apprehend the danger and he neglected to act.

It is also contended that because Catlett in attempting to cross the tracks upon a path which was not upon an established street or road, he was a trespasser and therefore guilty of contributory negligence, and for such reason plaintiffs may not recover.

It is not important in this case to consider whether Catlett was a trespasser or licensee, though sufferance upon the part of the defendant, of the common use of the path and without objection, for so long a period, would

seem under the general rule, to give him the latter status, but in either event such fact is not sufficient in itself to relieve the defendant of the exercise of due care.

In the case of *D. & R. G. Ry. Co. v. Buffehr*, 30 Colo. 27, 69 Pac. 582, where the plaintiff was clearly guilty of contributory negligence in walking upon the company's tracks, without taking any reasonable precaution to avoid danger and where the court said of her conduct, that she ought to have seen the train, and if she had exercised reasonable care, would have seen it, Mr. Justice Campbell stated the rule as to the duty of the carrier to be:

"So, with respect to the defendant, though its engineman did not see plaintiff upon the track in time to avert the accident, still, if, in the circumstances of this case, he ought to have seen her, and through some fault or neglect of his own did not, the result is the same as if he had seen her and did not stop his train, if, with safety to his passengers, he could have done so after actually seeing her."

In the case at bar, Catlett attempted to cross the tracks at a time when there was no real or apparent danger. He was at least in a helpless condition, at the time of the accident, and therefore powerless to do anything to save his life.

And in *Nichols v. C., B. & Q. Ry. Co., supra*, after referring to and approving the doctrine of the *Buffehr* case, it was said:

"The duty to exercise due care to avoid the consequences of another's negligence arises when the circumstances are such that an ordinarily prudent person would have reason to apprehend its existence.—4 Current Law 774. In actions of this character it is not necessary that the defendant should actually know of the danger to which the plaintiff is exposed, but it is enough if, having

sufficient notice to put a prudent man on the alert, he does not take such precautions as a prudent man would take on similar notice. Sher. & Redf. Neg. (5th Ed.), §§ 99, 483-484.''    *    *    *

"Ordinary care on the part of an engineer requires vigilance to guard against a dangerous situation reasonably to be apprehended as well as one actually imminent."

In the present case, where the train was crossing the streets of a city, and the particular path so commonly used, and so generally used at the identical hour of the day by numerous employes of the factory, a dangerous situation was reasonably to be apprehended.

The rule so adopted by this court and the reasons therefor, are admirably stated in the case of *Ft. Worth D. C. Ry. Co. v. Longino,* 54 Tex. Civ. App. 87, 118 S. W. 198, as follows:

"We take it to be well settled that railroad companies are charged with the duty of exercising ordinary care to discover the presence of persons on their tracks, and to avoid injuring them at those places where, under all the circumstances, they are reasonably chargeable with knowledge that such persons are liable to be; and in our judgment it can make no difference so far as the duty of the railroad is concerned, whether such persons are technically to be classed as trespassers, licensees, or persons using the company's tracks as of right. In all such cases the duty is imposed because of the broad rule of humanity that one engaged in so dangerous a business is required to exercise ordinary care to avoid injuring another, when the presence of and danger to such other person is reasonably to be anticipated."

This language was quoted with approval by the United States Circuit Court of Appeals in the case of

*Great N. Ry. Co. v. Thompson,* 199 Fed. 395, 118 C. C. A. 79.

The court erred in directing a verdict. The case should have been submitted to the jury.

The judgment is reversed.

In department.

MUSSER, C. J., and GABBERT, J., concurring.

Decided February 2, A. D. 1914.  Rehearing denied March 2, A. D. 1914.