## No. 8667.

### VALLERY v. BARRETT.

1. TRIAL—*Directing Nonsuit or a Verdict for Defendant* is admissible only in an entire absence of testimony tending to establish plaintiff's case.

2. VERDICT—*Upon Conflicting Evidence,* will not be disturbed.

3. INSTRUCTIONS—*To be Considered as a Whole.* An omission in one part of the charge may be supplied by what elsewhere appears therein. Reference to a particular statute, having, in part, no application to the matter in issue, is cured by an instruction which confines the attention of the jury to what is alleged in the complaint.

4. CONTRIBUTORY NEGLIGENCE—*Evidence.* Action against a railway company for negligently maintaining a bridge so narrow that while plaintiff's intestate, an employee, was looking from the engine his head came in contact with one of the side trusses, the collision resulting in his death. Testimony that on the previous day the engineer had said to the deceased, "don't look out, there's a bridge kind of close here," was held too indefinite to establish knowledge on part of the deceased that the bridge was dangerous.

Testimony of a witness that while passing through the bridge his hat was knocked off by the rods thereof *held* competent.

5. EVIDENCE—*Opinions of Witnesses,* as to their understanding of the rules of a corporation bind no one.

6. PERSONAL INJURY—*Damages.* Action under the Federal Employers' Liability Act for the death of an employee attributed to the negligence of defendant. Deceased was twenty-four years of age, of good health, and good habits. He had been earning from $70.00 to $109.00 per month. He left a widow and one child. There being nothing in the record to indicate passion or prejudice on the part of the jury, an award of $12,500 as damages was sustained.

*Error to Lake District Court, Hon. Charles Cavender, Judge.*

*Department.*

Mr. HENRY T. ROGERS, Mr. GEORGE A. H. FRASER, and Messrs. ROGERS, ELLIS & JOHNSON, for plaintiff in error.

Messrs. HOGAN & BONNER, for defendant in error.

Opinion by Mr. Justice Teller.

The defendant in error, as administratrix of the estate of John L. Barrett, deceased, brought suit against the plaintiff in error, to recover damages for the death of her intestate, alleged to have been caused by the negligence of the railroad company while he was in its employ. The train on which Barrett was employed when killed was engaged in interstate traffic, and the action was brought under the Federal Employment Liability Act.

The amended complaint alleges that deceased was employed by the defendant as a fireman on engine No. 4, of

said train, which was moving westward from Arkansas Junction; that while said train was passing over bridge 134-A, which bridge was imperfectly constructed, defective and unsafe, in that there was insufficient space or clearance between the engine, and the side trusses of the bridge, and while plaintiff's intestate was keeping a lookout around and past the side of the engine cab, as the rules of said company required him to do, his head came in contact with the side of the bridge, by reason of said narrow clearance, in consequence of which his head was crushed, and he was cast upon the ground and killed.

The answer put in issue these allegations of the complaint, as well as other matters, which need not be considered, since the court submitted to the jury only the question whether or not the death of Barrett was caused by the negligence of the defendant in constructing and maintaining a bridge, defective in the respect named.

The testimony showed that the body was found a few feet west of the bridge, marks and blood stains on the bridge, and blood on the ground indicating that deceased had been dragged there from a point 10 or 15 feet east of the west end of the bridge. His cap and a portion of his skull and brains were found beneath the bridge at said point.

It is admitted that the clearance between the upright timbers of the bridge and the engine was about 18 inches. It is also admitted that the rules require a fireman on duty to look out for signals and obstructions, "as far as practicable." There was testimony in regard to the wounds on the body, tending, as plaintiff claimed, to show that while deceased was leaning out from the engine to look ahead for signals and obstructions, his head was struck and crushed by one of the side rods of the bridge.

There was testimony on the one side that a man of 5 feet 8 inches tall, by leaning out a considerable distance, could reach with his head the rods on the side of the bridge. On the other hand, a witness 6 feet tall testified that he could not, by leaning out from the deck beam, touch the rods or timbers without holding to something. A witness tes-

tified that, while on duty as a fireman, in crossing this bridge, his hat had been knocked off by the timbers, when he was leaning out of an engine which was a little wider than the one on which deceased was riding. There was testimony also of employees of the plaintiff in error, who had been in service a long time, to the effect that the clearance on this bridge was not so small as to make it dangerous.

A witness for defendant testified that lumps of coal naturally fall on the engine deck, and that it was possible that a person stepping on such scattered coal might trip or wrench his ankle and fall. This was to support the defendant's contention that deceased fell from the engine, and thus was injured. No one saw the accident, which occurred before daylight in the morning; but the engineer testified that he saw Barrett's feet and part of his legs, as they disappeared from the engine. There was considerable testimony on the part of defendant as to the width of bridges on other railroads, as well as to a fireman's position on the engine when looking out; and as to the speed of the train; the swaying of the engine; and deceased's opportunities for knowing the condition of the bridge. It appeared that a pilot conductor was occupying the fireman's seat on the left side of the engine; hence deceased could not look out through the window on his side of the cab.

The jury found for the plaintiff and assessed the damages at $12,500.00. Judgment was entered on the verdict.

Counsel for plaintiff in error earnestly contend that the court erred in refusing to direct a verdict for the defendant, and cite many cases to the effect "that it is not admissible to go into the domain of conjecture, and pile one presumption upon another." That, they say, was done by the jury in this case.

It is unnecessary to consider the application of those cases to the facts of this case, since this court has laid down rules applicable to the facts in evidence, and which determine it. In *Hotchkiss Mt. M. & R. Co. v. Bruner*, 42 Colo. 305, 94 Pac. 331, this court said: "In actions of this character it is not necessary to show by eye-witnesses that the de-

ceased came to his death because of negligence on the part of the defendant, and freedom from negligence on the part of the deceased. These matters may be proven by show- ing circumstances from which their existence may fairly and logically be inferred." Again: "It is only where there is an entire absence of testimony tending to establish the case that a nonsuit may properly be ordered, or a verdict directed. See also *Williams v. Sleepy Hollow M. Co.,* 37 Colo. 62-70, 86 Pac. 337, 7 L. R. A. (N. S.) 1170, 11 Ann. Cas. 111. This is the rule everywhere recognized. "When the facts are disputed and the inferences from those facts uncertain, and different conclusions may be drawn by dif- ferent minds, it is for the jury to make them." Black's Law and Practice in Accident Cases, 343.

Here the jury was not left to guess at the cause of injury. There was evidence of facts from which such cause might fairly and logically be inferred. It is urged that deceased may have fallen from the engine because he stepped on coal scattered on the engine deck; but there is no evidence that there was any coal there. It being shown that the rules re- quired deceased to look out for signals, and that it was a quite general practice for firemen to watch the smoke stack to determine how the fire was burning, the jury might well conclude, in view of the evidence as to the clearance on the side of the engine, the inability of deceased to look out through the window, because his seat was occupied by another employee of the defendant; the marks on the bridge, and the condition of the body, that plaintiff's theory of the case was correct; and that deceased did not know that the bridge was dangerous.

The fact that others might not consider that conclusion justified is not material, if it is reasonable and fair. *Catlett v. Colo. Southern Ry. Co.,* 56 Colo. 463, 139 Pac. 14.

The case of *Cate v. Boston & Maine R. R. Co.,* 77 N. H. 70, 87 Atl. 255, is in its facts quite similar to this. At the time of the injury a flagman was occupying the fireman's seat, and after the train had passed a covered bridge, the fireman's absence was noticed. The train was backed up

and the body found about 84 feet before the bridge was reached, with the skull crushed. It appeared that the clearance between the engine and the side of the bridge was 21 inches. The court, in discussing an objection identical with the one now under consideration, said: "No one saw the accident, and the defendants contend that it is at least as probable that the condition which caused it was one for which they were not responsible as that it was one for which they were responsible. The evidence, however, does not sustain their contention. The location of the wound on the deceased's head, the position of his body when found, the place where it was found, the marks on the bridge, the position of the other occupants of the cab, the work Cate was doing when last seen, and the work it was his duty to do, all point to the conclusion that he was killed while leaning out of the gangway in order to keep a lookout for danger. In other words, it can be found that he was killed while doing what he was employed to do in the way the defendants ought to have anticipated that he might do it."

The question of defendant's negligence, or the deceased's contributory negligence, and of his assumption of the risk, was properly submitted to the jury, and the evidence being conflicting the verdict cannot be disturbed on the grounds urged.

It is further alleged that the court erred both in giving and in refusing to give instructions. Tendered instructions 8 and 9, were to the effect that plaintiff's theory of the case must be established "by facts and circumstances that are sufficient to exclude any reasonable probability that the accident happened in any other way." Counsel contend that it was error to refuse them, and that an instruction offered, by defendant, and given as number 16 did not cover the point intended in that it said, "Plaintiff cannot recover upon a possibility." But the succeeding paragraph supplied the supposed omission. It is: "Unless the conclusion that Barrett's fall was so occasioned is the only conclusion which can be reasonably drawn from the facts proved, your ver-

dict must be for defendant." Other parts of the instructions are clearly to the same effect.

Tendered instruction number 11 set out the duty of an employee to inform himself of the ordinary and obvious hazards of his employment, and it alleged that the court erred in refusing it, instruction number 17 as given not mentioning such duty. The instruction given clearly stated, and in effect repeated, that deceased must be held to have assumed all such risks as were open and obvious, or of which he could have obtained knowledge by the exercise of ordinary care. Making him liable for a failure to know of the risks when ordinary care would disclose them, is, in effect, a penalty for not discharging a duty to discover them; and the jury could have been under no misapprehension as to the law in that regard. Instruction number 1 is alleged to be bad because it contains a part of section 2 of the Employers Liability Act, which counsel insist had no application to any fact in evidence. While one paragraph of the section clearly does not apply in this case, the including of it in the instruction could not have misled the jury, since by instruction 13 they were told that on the question of defendant's negligence they were to consider only that of the alleged negligence of defendant in maintaining a bridge with the clearance described in the evidence.

We cannot agree with counsel that the evidence showed conclusively that deceased was warned of the condition of the bridge, and that, therefore, instruction number 5, which left to the jury the question of his knowledge, is improper.

The testimony was only that the engineer, on one of the two trips made by deceased over the road the day previous, as they were approaching the bridge, said to him: "Don't look out, there's a bridge kind of close here." Such testimony is entirely too indefinite to establish the fact that deceased knew the bridge to be dangerous. The jury had a right to consider this warning in connection with the fact that deceased had been over the road but three times, at most; as bearing upon the opportunities he had for observing the bridge, and learning its location, while at work on a rotary snow plow,

It is further contended that inasmuch as two witnesses testified that the rules did not require deceased to look out at the time of the accident, instruction 8 which left to the jury the question as to his obeying the rule, was erroneous. These witnesses merely testified to their understanding of the rules, but their opinion was not binding on anyone.

It is objected that a witness was permitted to testify that his hat was knocked off by the rods on this bridge, but as the testimony was not offered to prove an independent case of negligence, but to show that a man on the engine by leaning out might be struck by the rods, to meet evidence offered by the defendant that the head of a tall man on the engine would not reach the side of the bridge if he leaned out, it was clearly competent.

A witness was asked, over defendant's objection, what would be the distance from the bridge at a point opposite a man's head, he being 5 feet 11 inches tall, "assuming that he was standing upright." It is urged that there was no evidence that deceased was standing upright, hence the question was improper. The answer was that the clearance would be approximately 1 foot and 6 inches. Inasmuch as counsel contend that the clearance at that height is totally immaterial, and discuss the clearance as being 1 foot and 6 inches, it cannot be that the error, if it were one, was prejudicial.

The final objection is that the verdict is excessive.

The deceased was a young man, 24 years of age, in good health, and of good habits. He had been earning from $70 to $109 per month. He left a widow, the defendant in error, and one child. Verdicts very much larger because of the death of persons with no greater earning capacity and less expectancy of life, have been affirmed in other states; and we find nothing in the record which indicates that the jury was moved by passion or prejudice. The case was fairly and ably tried, and the record discloses no reason for disturbing the judgment.

The judgment is affirmed.

Chief Justice White and Mr. Justice Hill concur.