## No. 11,552.

CITY OF LONGMONT *v.* SWEARINGEN, ET AL.

Decided April 4, 1927.

Action to recover for death of plaintiffs' son. Judgment for plaintiffs.

### *Affirmed.*

1. NEGLIGENCE—*Proof.* Negligence may be proved by showing circumstances and facts from which negligence may be logically inferred.

2. NONSUIT—*Directed Verdict.* It is only where there is an entire absence of testimony tending to establish the case that a nonsuit may properly be ordered or a verdict directed.

3. *Evidence—Different Conclusions.* Where the question of negligence depends on a state of facts from which different minds may honestly draw different conclusions, the question must be submitted to the jury.

4.  NEGLIGENCE—*Drowning—Proximate Cause.* In an action for death of plaintiffs' son by drowning, evidence reviewed and held to justify a jury finding that failure to have a life guard on duty was the proximate cause of death.

5.  *Proximate Cause.* Proximate cause is a question for the jury.

6.  *Municipal Corporations—Drowning—Life Guard.* In an action for the death of plaintiffs' son by drowning in a swimming pool maintained by a city, it is held, under the facts disclosed, that the absence of a life guard was negligence.

7.  PLEADING—*Complaint.* In an action for death of plaintiffs' son, complaint reviewed and the contention that its allegations are that death resulted from a combination of circumstances, overruled.

8.  *Negligence—Proof.* In an action for death of plaintiffs' son, all acts of negligence alleged need not be proved, but if two or more acts of negligence are alleged as constituting a cause of action, all must be proved as laid.

9.  INSTRUCTIONS—*Measure of Damages.* In an action for death of plaintiffs' son, objection to an instruction on the measure of damages, overruled.

10. *Negligence—Insurer—Burden.* In an action for death of plaintiffs' son, the contention that an instruction placed upon defendant the burden of an insurer, overruled.

11. EVIDENCE—*Admissibility.* In an action for death of plaintiffs' son by drowning, admission of evidence that the water was cold and chilly, held not prejudicial to defendant.

*Error to the District Court of Boulder County, Hon. Robert G. Smith, Judge.*

Messrs. PERSHING, NYE, TALLMADGE & BOSWORTH, Mr. JOHN PERSHING, for plaintiff in error.

Messrs. RINN & CONNELL, for defendants in error.

*Department One.*

MR. JUSTICE SHEAFOR delivered the opinion of the court.

THE defendants in error, hereinafter referred to as the plaintiffs, recovered a judgment for $3,500 against the plaintiff in error, hereinafter designated as the defendant, to review which defendant brings the case here. Plaintiffs' recovery was for the death of their son Gene Leslie Swearingen, caused, they allege, by certain acts of negligence of defendant, the one relied upon here being that defendant failed to exercise reasonable care in connection with the maintenance and operation of a swimming pool, owned by defendant, in that defendant failed to provide a life guard or attendant to render assistance in time of need, and that such failure was the proximate cause of his death.

Defendant claims that the judgment should be reversed for the following reasons: (1) That its motion for a nonsuit should have been sustained because the evidence was insufficient to establish that the death of the deceased was caused by the negligence of the defendant, and that there was no evidence from which the jury could find that the presence of a guard would have changed the results. (2) That the plaintiffs alleged that the death of the deceased was due to a combination of circumstances arising by virtue of defendant's negligence, and that the evidence does not support such allegation. (3) That the court erred in giving to the jury instructions 6 and 12. (4) That the court erred in allowing the witness, Hugh Choice, to testify as to the condition of the water in the swimming pool on the 17th day of August, 1924, and (5) That the court erred in overruling defendant's motion for a new trial.

The evidence showed, or tended to show, that the death occurred on August 17, 1924, in a swimming pool in Sunset Park; that at the time there were quite a number of persons bathing in the pool, and others on the bank; that a number of small children were there with their parents; that Gene, the deceased, was about sixteen years of age, strong and healthy, and a good swimmer; that he, with another boy, Lyle Davis, went in the pool

together; that at the time of his death he was about thirty-five feet from the tower and dike where the boys entered; that he sank three times, and that about nine minutes elapsed between the time he was first seen in distress until he sank the last time; that much effort was made, by calling for help and trying to find a guard, to get to the boy's assistance; that no guard could be found, and that none was there; that his struggling and distress attracted the attention of his mother and others; that after his body was recovered, water with some blood was seen coming from his mouth, and his face and arms were blue. Two doctors were immediately called, and they endeavored to resuscitate him. The opinion of one of the doctors was that heart failure rather than drowning was the cause of death, but said only an autopsy would have shown conclusively the cause. He further said that a person affected with heart attack would not be apt to struggle in the water from three to five minutes, and in fact, not more than one minute. The other physician said he was not able to reach a satisfactory conclusion as to what did cause the boy's death, but that heart failure was a possible cause. There was also evidence that one Johnson was employed as a life guard, who had been on duty there continuously prior to the 17th of August, but was absent, with the knowledge of defendant, on that date.

The park and pool were owned and operated by defendant under the control and management of the Longmont park board. One Niven was a caretaker of the premises, employed by the park board and held a concession for the renting of bathing suits, and for the sale of soft drinks and candies. Defendant received a percentage of the profit earned by Niven from the concession. On the Sunday in question the deceased had rented from Niven a bathing suit, which he was wearing at the time of his death. The coroner held no inquest, but signed the death certificate showing accidental drowning as the cause of death, and testified that he based his in-

formation upon facts obtained from the doctors. The evidence further showed that the deceased lived at home with his parents; that he was strong and healthy; worked with his father upon the farm, and aided in the support of the family.

The evidence was ample to sustain the verdict of the jury that the cause of death was drowning. In the light of the evidence, we think it would have been very difficult to secure a jury which would have returned any other finding.

As to defendant's first proposition, it seems to be well settled that negligence may be proved by showing circumstances and facts from which negligence may be logically inferred. *Hotchkiss Mt. M. & R. Co. v. Bruner,* 42 Colo. 305, 94 Pac. 331; *Vallery v. Barrett,* 63 Colo. 548, 551, 552, 167 Pac. 979. And also it has been held that it is only where there is an entire absence of testimony tending to establish the case that a nonsuit may properly be ordered, or a verdict directed. *Hotchkiss Mt. M. & R. Co. v. Bruner, supra, Vallery v. Barrett, supra, Williams v. Sleepy Hollow M. Co.,* 37 Colo. 62, 72, 86 Pac. 337, 7 L. R. A. (N. S.) 1170, 11 Ann. Cas. 111.

So, "where the question of negligence depends on a state of facts from which different minds may honestly draw different conclusions on that issue, the question must be submitted to the jury for determination." *Nichols v. C., B. & Q. R. R. Co.,* 44 Colo. 501, 508, 98 Pac. 808, 812; *Catlett, et al. v. C. & S. Ry. Co.,* 56 Colo. 463, 471, 139 Pac. 14; *Williams v. Sleepy Hollow M. Co., supra.*

In the examination of this evidence we are led to the conclusion that there was sufficient on the question of negligence to require submission of the case to the jury, and to sustain the jury's finding on that question.

It is urged, however, that there was no evidence that the defendant's negligence was the proximate cause of the death. While it is true that there was no direct evi-

dence that if a life guard had been present death would not have resulted, yet we think the facts and circumstances proved were sufficient, together with the inference which may logically be drawn from the evidence, to justify the finding that a failure to have a life guard there was the proximate cause of death.

All that is necessary, to warrant the finding of proximate cause, is to establish by the evidence such facts and circumstances as would indicate with reasonable probability that the death was caused by drowning, which resulted from the negligence of defendant in not having a life guard present, because, from this evidence it may fairly and logically be inferred that had a life guard been present death would not have resulted. The causal connection may be established by the circumstances. Proximate cause is a quesiton for the jury. *Tadlock v. Lloyd,* 65 Colo. 40, 45, 173 Pac. 200.

That the absence of a life guard, in the circumstances shown here, may be negligence cannot well be disputed, and we think is sustained by the authorities. *Brotherton v. Manhattan Beach Imp. Co.,* 48 Neb. 563, 67 N. W. 479, 50 Neb. 214, 69 N. W. 757; *Decatur Amusement Park Co. v. Porter,* 137 Ill. App. 448. To require direct evidence that if a life guard had been present death would not have resulted, would be to exact evidence which it would be impossible to obtain, and would result in a denial of justice.

Defendant's second proposition is that plaintiffs' allegations are that death resulted from a combination of circumstances. We do not think this is true. They allege that he met his death, "in each and all of the following particulars and facts," and then further allege, "(5) In negligently and carelessly permitting said swimming pool to remain open * * * when no attendant or life guard had been employed * * * while the water was unusually cold and chilling * * *." These averments do not amount to an allegation that death resulted from combined acts of negligence. All acts of

negligence alleged need not be proved. If two or more acts of negligence are alleged as constituting a cause of action, of course all must be proved as laid, but such is not the allegation here.

Defendant's next contention is that the court erred in giving instruction No. 12. This instruction was to the effect that if the jury found for the plaintiffs, the true measure of damages and compensatory relief to the plaintiffs would be a sum equal to the net pecuniary benefit which the plaintiffs might reasonably have expected under the evidence in the case to receive from such infant in case his life had not been terminated by the alleged wrongful act, neglect or default of the defendant, and then charged the jury that, "the damages to be awarded may be approximated by considering the age, health, habits, condition in life, of industry or otherwise, ability to earn money on the part of the deceased, including his disposition to aid or assist the plaintiffs. Such damages recoverable by a parent for the death of a minor child are not limited to such sum alone as the parent would probably have received from a child during the residue of the child's minority, but the parent is entitled to recover such sum as will fairly and reasonably compensate the parent for any financial loss sustained by reason of the child's death, such sum to be measured by such sum as the evidence would tend to show would have been received by the parent had the child continued to live, taking into consideration the child's disposition and ability to contribute to the parents' wants and necessities during the parents' probable duration of life, and at the same time the parents' age, occupation, health, pecuniary condition, and probable wants."

Defendant's objections to this instruction are, first, that there was no evidence upon which an award of damages, to compensate for loss of expected benefit from deceased, had he lived past the age of minority, could be based, and second, because it authorized a recovery by plaintiffs for loss to be measured by such sum as the evi-

dence tended to show would have been received had the deceased continued to live.

There could, of course, be no direct evidence of what the deceased could or would do in the way of support of the family after he would have reached his majority. However, we think it is settled in this jurisdiction that a recovery may be had for the probable pecuniary benefit which the parents may reasonably expect from the continuance of the life beyond the minority of the deceased. *Molly Gibson Co. v. Sharp,* 5 Colo. App. 321, 327, 38 Pac. 850; *Pierce v. Conners,* 20 Colo. 178, 181, 37 Pac. 721, 46 Am. St. Rep. 279; *Southern Colo. Power Co. v. Pestana,* 80 Colo. 375, 251 Pac. 224, 226.

In *Potter v. Chicago & N. W. R. R. Co.,* 21 Wis. 377, at page 380, (94 Am. Dec. 548) the court said: "The weight of authority is, that the jury may take into account the reasonable expectation of pecuniary benefit from the continuance of the life beyond the minority."

A further contention is that the court erred in giving to the jury instruction No. 6, for the reason that it placed upon the defendant the burden of an insurer. We do not think so. This instruction told the jury that it was the duty of the defendant to exercise reasonable care to guard against a certain character of accidents in connection with the maintenance and operation of the swimming pool; that if they found from a preponderance of the evidence that in the exercise of such reasonable care, the defendant should have provided a life guard or attendant to render assistance, and failed to do so, and that such failure was the proximate cause of the death of the plaintiff's son, and that neither the negligence of the plaintiff nor of the deceased, if any, proximately contributed thereto, their verdict should be for the plaintiffs.

Furthermore, instruction No. 11 charged the jury that defendant is not to be regarded as an insurer of the life and safety of those who in the exercise of their independent judgment and discretion chose to enter the bath-

ing pool, but was only charged with the duty of exercising ordinary care. This instruction was given at the request of the defendant.

A further contention of defendant is that the court erroneously admitted the testimony of Hugh Choice as to the water being cold and chilly. We have searched the abstracts diligently and do not find that Choice testified to any such thing; but assuming that he did, we do not think the admission of his evidence was error. It went in a general way with other testimony to show the situation and surroundings at the time of the death, and we fail to see wherein it could have been prejudicial to defendant.

W. B. Davis testified that the water was cold, and this testimony appears to have been received without objection. We have examined the record with care, and find nothing that would require a reversal. The judgment should be affirmed.

Affirmed.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE WHITFORD and MR. JUSTICE DENISON concur.