No. 12,946.

AVERCH ET AL. *v.* JOHNSTON.
(9 P. [2d] 291)

Decided February 29, 1932.

Mr. WILLIAM E. HUTTON, Mr. BRUCE B. McCAY, for plaintiffs in error.

Mr. OTTO FRIEDRICHS, for defendant in error.

*In Department.*

MR. JUSTICE BUTLER delivered the opinion of the court.

IN a personal injury action, Lester F. Johnston, called herein the plaintiff, obtained a judgment for $2,800 against Morris, Dave and Meyer Averch and Sam Kaminski, copartners doing business as the Capitol Packing Company, called herein the defendants.

The defendants operate a packing plant. In the rear of the building is a "driving chute," extending from the cattle pen up to the door of the killing room, a distance of some sixty or seventy feet. With an end against the rear of the building and one side built against the chute, is a coal bin. On November 11, 1930, Joe Vedick, employed by the defendants as "killer," was trying to get some cattle to enter the chute so that he could drive them into the slaughterhouse, and the plaintiff was delivering coal to the defendants. After shoveling coal into the bin, the plaintiff removed his truck to one side to get it out of the way, and proceeded to pick up the coal that had fallen on the ground between the truck and the bin. Vedick threw a piece of wood at a cow. The missile hit the cow on the head, glanced off, passed through an opening between the boards of the chute and struck the plaintiff in the face. The missile was from eighteen

inches to two feet long and weighed about a pound and a half.

█ 1. There can be no question that the plaintiff was injured. The evidence regarding the extent of the injuries, however, was conflicting. If the jurors believed the testimony of the plaintiff and his witnesses, and they did, the amount of damages awarded was not excessive.

█ 2. Counsel for the defendants contend that Vedick was not negligent in throwing the missile; that it cannot be said that he reasonably could have anticipated the results that followed his action.

There was evidence that would justify an inference that Vedick was a powerful man; though he modestly declared that he did not know that he was, and that, using a five-pound sledge, he did not always kill cattle with one blow. He said he was a "little mad" because the cattle would not go as he wanted them to go; that the plaintiff's presence there scared the cattle; that "the cattle get wild and won't do a thing for you if someone is around there looking in on you"; and that "that one cow made me mad because she pretty near got me." Vedick picked up the stick, or club, and threw it at one of the cows and hit her on the head with such force that the missile glanced off and struck the plaintiff. According to the testimony of a disinterested bystander, it was a "terrific blow." At the time he threw the missile, Vedick knew where the plaintiff was standing. Where the testimony was in conflict, we have accepted, as we are required to do, the testimony favorable to the successful party, the plaintiff.

Whether, in the circumstances, Vedick was negligent was a question for the jury to determine. They were correctly instructed on the law of negligence. At the request of counsel for the defendants, they were told, also, that unless they believed from a preponderance of the evidence that Vedick ought, in the exercise of reasonable care, to have foreseen that his act in throwing the club might cause injury to another, they would not be justified

in finding him guilty of negligence; and also that if the injuries were the result of an unavoidable accident, their verdict should be for the defendants. The jury found, in effect, that the plaintiff's injuries proximately resulted, not from an unavoidable accident, but from negligence on the part of Vedick. We cannot disturb their findings in that regard.

3. Vedick testified that about five minutes before he threw the missile he saw the plaintiff about three feet from the fence, at the lower end of the chute, looking at the cows; that Vedick asked him to move away from the fence because the cattle would not go into the chute while the plaintiff was there; and that the plaintiff thereupon moved away. He also testified that he did not see the plaintiff picking up any coal from the ground —"I did not pay much attention"; that he did not know whether or not the plaintiff was picking up coal. Isell, another witness for the defendants, testified that about half a minute or a minute before the missile was thrown he heard Vedick request the plaintiff to go away from there; that the plaintiff stepped back "a ways," and was about eight feet from the chute when struck by the missile. All this was denied by the plaintiff and by a disinterested witness. Based upon the testimony of Vedick and Isell, the defendants requested the court to give the following instruction: "You are instructed that if you believe from a preponderance of the evidence that the plaintiff was warned or requested to get away from the fence and that he was not engaged in putting coal into the bin at the particular time of the accident, then he was a mere trespasser on the premises and your verdict should be for the defendants." The request was denied. Other instructions relating to warning and trespass were requested and refused.

If we are to believe the defendants' witnesses, the plaintiff, when requested, moved away promptly; in fact, he walked all the way from the lower end of the chute to the coal bin, a distance of something like fifty feet.

The plaintiff was eight feet away from the fence when he was struck by the missile, which was thrown between half a minute and four minutes after Vedick requested the plaintiff to move away. The contention that Vedick's request amounted to a revocation of the plaintiff's license to be upon the premises, and that the plaintiff thereupon became a trespasser, cannot be sustained.

Nor can we agree with the proposition, included in the request for an instruction, that if the plaintiff was warned or requested to get away from the fence' and was not engaged in putting coal into the bin "at the particular time of the accident," he was a mere trespasser and the verdict should be for the defendants. The plaintiff went upon the premises, not as a mere licensee, but under a contract duty to deliver coal and to put it in the bin. That included picking up and putting into the bin the coal that had fallen upon the ground. There was no evidence that he had finished that work; indeed, all the evidence was to the contrary. The fact that the defendants' witnesses did not see him picking up the coal when he was requested to move, or at the moment he was struck, does not indicate that he had finished the work. At most, it would indicate that, after the fatiguing labor of shoveling a truck-load of coal, the plaintiff was resting for a few minutes before finishing the work.

But assuming that the plaintiff had finished his work and was lingering there under circumstances that constituted him a trespasser, the defendants would not thereby be relieved of liability. The defendants contend that "no duty is owed to a trespasser * * * except to refrain from any intentional injury to him." That states the rule too broadly. According to 20 R. C. L., pp. 59, 61, this is the rule: "The obligation owed to all such persons as are upon the premises without right is the same; merely not willfully and intentionally to injure them— or as it sometimes is expressed—not to injure them after becoming aware of their presence. * * * Of course, after the trespasser's presence has become known to the land-

owner, reasonable care must be taken not to injure him by any affirmative act or force set in motion." In the instant case, the presence of the plaintiff was known, and he was injured, as the jury found, by a negligent act or force set in motion by an employee of the defendants. In *Catlett v. Colorado & Southern Ry. Co.,* 56 Colo. 463, 139 Pac. 14, we held that a railway company is liable for the death of a person killed while trespassing upon its tracks, if the company's fireman saw him, or in the exercise of reasonable care could have seen him, in time to have avoided the accident. And see *Denver & R. G. R. R. Co. v. Buffehr,* 30 Colo. 27, 69 Pac. 582; *Nichols v. Chicago, B. & Q. R. R. Co.,* 44 Colo. 501, 98 Pac. 808; *Florence & C. C. R. R. Co. v. Kerr,* 59 Colo. 539, 151 Pac. 439.

4. It is said that the trial court erred in admitting certain evidence over the defendants' objection.

According to the testimony of the plaintiff, he was struck while he was bending over, picking up coal, and did not see who threw the missile. His witness, Berg, testified that he was watching plaintiff picking up coal; that he saw the missile strike the plaintiff, but did not see who threw it. It was necessary, of course, to prove who threw the missile, so Vedick, though still in the employ of the defendants, was called to the stand by the plaintiff, and testified that he was the one who threw the missile. Later he was called by the defendants as their witness, and testified to his warning the plaintiff to move away from the fence so that the cattle would go up the chute; to the throwing of the missile; to the place where the plaintiff was standing when he was struck; and that Vedick had no idea that the missile would strike the plaintiff. He testified quite fully concerning the occurrence. On cross-examination, he was asked concerning the throwing of the missile. He said he was not accustomed to throwing clubs at the cattle, but that that one cow made him mad. He was asked, "You were very mad at that cow?" He answered, "Not exactly. I wasn't

really what you would call mad," etc. He then was asked whether he did not say to the plaintiff and his wife, "I was awful mad at that cow, and I sure threw that stick hard." He denied having made the statement. In rebuttal, the plaintiff, his wife and another witness, over the defendants' objection, testified that .Vedick did make that statement. The evidence was not offered or received as an admission of the defendants; for that purpose, of course, it was not admissible. It was offered solely for the purpose of affecting the credibility of Vedick. Assuming, but not deciding, that the evidence was inadmissible for that purpose, its admission was not prejudicial. When called to the stand by the plaintiff, Vedick testified that when he threw the missile he was a "little mad" because the cattle would not go. When called as a witness for the defendants, he testified that when he threw the missile he was at the lower end of the chute, and that the plaintiff was at the coal bin. As that was about fifty feet away, he must have thrown the missile with considerable force. In view of all the testimony, the error, if any, in admitting the impeaching evidence did not affect the substantial rights of the defendants, and the Code of Civil Procedure, section 84, forbids a reversal in such a case.

5. Counsel for the defendants contend that their clients are entitled to a reversal because of improper statements made by counsel for the plaintiff in argument to the jury.

(1) In discussing that part of Vedick's testimony that was favorable to the defendants, counsel for the plaintiff said that Vedick had an interest in the case and was compelled because of his employment by the defendants to testify in favor of the defendants, and that if the defendants lost any money Vedick was going to lose his job. The court promptly instructed the jury that such statement was improper, and there was no repetition of the offense. The jurors had taken an oath to render a true verdict "according to the evidence." The court in-

structed them in writing that, in determining the facts, they should consider only the evidence, and that the argument and remarks of counsel were not evidence. The statement, though crudely expressed, no doubt was taken by the jury as meaning that by reason of his employment, and not because of any threat or coercion by the defendants, Vedick felt under obligation to testify in favor of the defendants; and that, judging from the common experience of mankind, if the verdict went against them by reason of the testimony of Vedick, he would lose his job. See *International & G. N. Ry. Co. v. Rhoades,* 21 Tex. Civ. App. 459, 52 S. W. 979. In *Southern Pac. Co. v. Hart,* 53 Tex. Civ. App. 536, 116 S. W. 415, plaintiff's counsel, in arguing to the jury, remarked that if a witness for the defendant had told the truth as to how the accident happened, "his job with the Southern Pacific would not have lasted longer than a snowball in Yuma." The trial court orally instructed the jury not to consider the language used. The appellate court held (p. 538) that the remark, though improper, was not so obviously prejudicial as to call for a reversal.

In the present case, the trial court, in denying the motion for a new trial, held that counsel's remark was not prejudicial to the defendants, and in that view we concur.

(2) With a mistaken idea as to what constitutes a joke appropriate to such an occasion, counsel for the plaintiff told the jury that on one occasion he had this conversation with Mr. Hutton: "I said, 'Mr. Hutton, you are recognized as a very successful lawyer and I wonder if you can give me any opinions; I am about to practice law; I would like to be partially successful.' He said, 'I will give you the best rule I know.' He said, 'When you give any legal opinions, always camouflage them so they will never catch you in a trap, so they won't know what it is, but when you render your bill make it plain— no camouflage about that.'" Thereupon Mr. Hutton said: "I think that is a personal remark, if the Court please. I want to say, if your Honor please, I think it

should be entirely disregarded by the jury. There is no evidence to that effect, and I cannot conceive, if your Honor please, that I would ever make such a remark as that." The court at once addressed the jury in these words: "It is very out of place, and I will state to the jury it certainly should not be considered in any way in your consideration of the facts in this case." In denying the motion for a new trial, the trial judge, who, of course, had observed counsel's appearance while telling the story, and the appearance of the jurors while the story was being told, stated that the story was "one of those unfortunate things that come up sometimes in a case"; that the case was tried before "a very intelligent jury"; that, in the court's opinion, "any prejudice caused by the story would be against the plaintiff"; that the court was of the opinion that "it was not such a remark as tended to inflame the minds of the jury"; and that it did not constitute prejudicial error. That the story was mere fiction seems to be conceded; that it was in bad taste is beyond question; but, considering the jurors' oaths, the court's written instructions, the nature of the story, and the court's prompt action when it was told, we believe, as did the trial court, that the unfortunate incident did not prejudice the substantial rights of the defendants. We are of the opinion, therefore, that it does not necessitate a reversal of the judgment.

Finding no reversible error in the record, we affirm the judgment.

MR. CHIEF JUSTICE ADAMS, MR. JUSTICE MOORE and MR. JUSTICE BURKE concur.