No. 16,026.

ROESSLER *v.* O'BRIEN.
(201 P. [2d] 901)

Decided January 10, 1949.

Messrs. ADAMS & HECKMAN, Mr. CHARLES J. TRAYLOR, for plaintiff in error.

Messrs. HAYNIE & HOTCHKISS, for defendant in error.

*In Department.*

MR. JUSTICE ALTER delivered the opinion of the court.

BESSIE O'BRIEN, defendant in error here, hereinafter referred to as plaintiff, brought an action against J. W. Roessler, plaintiff in error here, hereinafter referred to as defendant, to recover damages in the sum of $5,000 for defendant's negligence in occasioning plaintiff's husband's death. The cause was tried to a jury, which returned a verdict in plaintiff's favor, and judgment having been entered on the verdict, defendant seeks a reversal here by writ of error.

In the complaint it is alleged that defendant was the owner of an apartment house in Grand Junction, and William O'Brien, plaintiff's husband, was therein as a guest of one of the tenants. Further, that the stairways, exits, fire escapes and hallways in defendant's apartment house were under his control and were maintained

for the use of the tenants therein and their guests. It is further alleged that as a result of the negligent construction, maintenance and lighting of the stairways, exits, fire escapes and hallways on said premises, plaintiff's husband fell from the fire escape in the rear of the apartment house and was fatally injured.

The bill of particulars which plaintiff filed specified defendant's negligence thusly: 1. He failed, neglected and refused to properly light the hallways; 2. he placed no sign or other indication over or on the doorway leading onto the fire escape; 3. the fire escape was open and not protected and constituted a trap for those unfamiliar with its condition; 4. the area to the rear of the apartment house upon which the fire escape fronted was dark, and the fire escape was covered with smooth iron or steel so slick as to constitute a hazard; 5. the stairways in the apartment house were not properly lighted, and there was no sign or other indication to clearly direct anyone to the proper exit.

In the answer it is admitted that defendant is the owner of the apartment house in question and that plaintiff's husband came to his death as alleged in the complaint. It is denied that the death of plaintiff's husband was the result of negligence in the construction, maintenance and lighting of the stairways, exits, fire escapes and hallways. For a second and further defense it is alleged that plaintiff's husband came to his death by reason of contributory negligence on his part and that the fatal injuries were directly and proximately contributed to and caused by decedent's carelessness and negligence.

The evidence discloses that on May 19, 1947, decedent was visiting a friend by the name of Johnson, who occupied an apartment in defendant's apartment house; and at about 12 o'clock midnight left to return to his home. Johnson observed him walking to the rear, rather than to the front, exit of the apartment house, where decedent had parked his automobile, and with reference

thereto, Johnson testified: "He started to go up the rear stairs, and I told him not to go up there, that there was different apartments up there and also a fire escape, and not to go upstairs at all. I told him to go direct through the front door. His car was in front." And when he last saw decedent he was down toward the front, and he stopped and turned around and said, "Goodnight, Jim."

Shortly thereafter a lady living across the courtyard to the north of the apartment house heard a scraping noise which she identified as being made by the door leading to the fire escape, and almost immediately thereafter heard groans. From an investigation decedent was found lying upon the concrete courtyard beneath the fire escape. He sustained injuries from which he died the following day.

The apartment house consists of a basement with four apartments and a first and second floor, each with six apartments. It faces southerly on one of the principal streets in Grand Junction and has a front and rear entrance. On entering the apartment house through the front entrance there is an entrance hall with stairs on the left leading to the basement. On the right of the entrance hall are apartment doorbells and mail boxes, and three steps leading therefrom to the first floor, on which apartment No. 3 is located, being the apartment occupied by Johnson. This apartment is the last apartment on the easterly side of the apartment house. In the rear of the hallway on the first floor is a door leading into a courtyard. Immediately above this doorway and on the second floor is a fire escape with a door leading out to it from the end of the hallway. The door on the first floor had no sign or other indication that it led into a courtyard, and the door on the second floor was likewise devoid of signs or other indications that it led to the fire escape. There was a light in the ceiling at the end of the hallway on the first and second floors, but whether it was burning and fully lighted the hallways

is a disputed question. The fire escape was over six feet in length, three feet in width, and was constructed of sheet metal and attached to the building, and was protected on the northerly and easterly sides thereof by handrails. The west side of the fire escape is open, and a steel ladder attached to the building is approximately a foot and a half from the platform of the fire escape and just opposite the west side thereof. This ladder leads from the roof downward to within five or six feet from the ground.

On the night in question decedent and Johnson had met downtown, and, after visiting there, decided to repair to Johnson's apartment. Decedent parked his automobile in front of the apartment house, and Johnson put his automobile in the garage at the rear thereof. When Johnson entered the apartment house after parking his automobile he found decedent standing at the door of his apartment.

At the conclusion of plaintiff's case, defendant interposed a motion for a directed verdict, which was overruled. Thereupon evidence was introduced to establish non-negligence of defendant and contributory negligence on the part of decedent.

There are nine specifications of points, but only one of which we deem it necessary to consider, i. e., The court should have directed a verdict against defendant in error at the close of her case.

█ █ As will be seen by reference to the allegations of the complaint herein, plaintiff's cause of action is based upon negligence; and the defenses, as evidenced by the answer, are a denial thereof, and, in addition thereto, contributory negligence of decedent. Negligence has been thus defined: "The failure to observe, for the protection of the interests of another person that degree of care, precaution and vigilance which the circumstances justly demand, whereby such other person suffers injury." *Colorado Springs and Interurban Railway Company v. Allen,* 55 Colo. 391, 135 Pac. 790. It should be

borne in mind that in actions based upon negligence there is a general rule that there must be a duty imposed by law and breached by defendant with resultant damages before an action for negligence can be maintained. It may be said that negligence is the antithesis of duty, and where there is no duty imposed there can be no actionable negligence. Here we are led to inquire what duty defendant owed decedent respecting the fire escape from which he fell, sustaining injuries resulting in his death. The particular acts which constituted defendant's alleged negligence are, of course, those specified in the bill of particulars, reference to which has been heretofore made.

The rule in this and many, if not all other, jurisdictions, is that when, at the conclusion of plaintiff's evidence in chief, defendant moves for a directed verdict, all the evidence then adduced must be considered in a light most favorable to plaintiff, and if it and all inferences which the jury may legitimately draw therefrom would not, as a matter of law, entitle plaintiff to a verdict, then it becomes the duty of the court to grant the motion.

Here it is not questioned that the entrance of the apartment house and through the hallway to Johnson's apartment afforded a reasonably safe means of ingress and egress, and there is no contention raised that respecting the same defendant was in anywise negligent. Defendant's alleged negligence for which recovery is sought here all has reference to conditions on the second floor of the apartment house; the door leading therefrom to the fire escape, and the construction of the fire escape itself; consequently, it becomes necessary to inquire what duty defendant owed decedent respecting the same. When decedent entered the apartment house, and while a guest of Johnson, he was unquestionably an invitee, and as to him defendant was under a duty to maintain the premises where the invitee might be expected to go in a reasonably safe condition for their intended use and

was under a like duty to the invitee to give him warning of any known latent or concealed defects. *Gotch v. K. & B. Packing and Provision Company*, 93 Colo. 276, 25 P. (2d) 719; *Rudolph v. Elder*, 105 Colo. 105, 95 P. (2d) 827.

We have also held that in order to establish a defendant's liability on account of negligence it is incumbent upon plaintiff to show that the defendant owed him a legal duty in the capacity in which he was acting at the time of the injury. *Hooker v. Routt Realty Company*, 102 Colo. 8, 76 P. (2d) 431. Here there was no city ordinance requiring the construction of a fire escape on defendant's apartment house, and it is obvious that its purpose was for use as a means of escape from the apartment house in event of fire therein. There is no evidence whatever that it was used, or intended to be used, for any other purpose. What decedent's object was in going upon the stairway to the second story of the apartment house, opening the door to the fire escape, and going thereon is inexplicable, especially in view of the warning of Johnson. Decedent was not expressly or impliedly invited, either by Johnson or the owner, to go to the second floor or to use the fire escape, and when he ostensively started home and instead went up onto the fire escape, he was using it for a purpose for which it was not intended or constructed. It is not necessary for us here to determine whether by departing from the way usually and customarily traveled in leaving Johnson's apartment to go to the street decedent became a licensee or trespasser, but certainly it cannot be successfully contended that in going on the second floor and the fire escape he still retained the status of an invitee. By departing from the usual course traveled in entering or leaving the apartment, decedent became either a licensee or trespasser, and then the only duty which defendant owed him was not to wilfully and intentionally inflict any injury. *Gotch v. K. & B. Packing and Provision Company, supra; Hooker v. Routt Realty Company,*

*supra; Averch v. Johnson,* 90 Colo. 321, 9 P. (2d) 291; *Windsor Reservoir & Canal Co. v. Smith,* 82 Colo. 497, 261 Pac. 872; *Lunt v. Post Printing & Publishing Company,* 48 Colo. 316, 110 Pac. 203; *Watson v. Manitou & Pikes Peak Railway Co.,* 41 Colo. 138, 92 Pac. 17.

For other cases involving actions for damages occasioned by injuries on a fire escape see: 30 A.L.R., p. 1395; supplemented in 49 A.L.R., p. 564.

█ Here it is undisputed that decedent had a safe and well-lighted hallway and exit from the apartment house and one which was used and maintained for that purpose; he chose another exit intended only for use as a fire escape when that emergency might arise, and for no other use whatever. Under these circumstances, where injury resulted, the owner of the apartment house owed decedent no duty to maintain the fire escape for any use other than that for which it was intended, and any damages·resulting from an improper use of the fire escape would not create a liability against the owner. *Gotch v. K. & B. Packing & Provision Company, supra,* and cases cited therewith; *Central National Bank & Trust Co. v. Lederer Strauss & Co., Inc.,* 236 Ia. 16, 17 N.W. (2d) 817; *Smelser v. Deutsche, etc.,* 88 Cal. App. 469, 263 Pac. 838; *Clyde v. Mitchell,* 14 Cal. App. (2d) 365, 58 P. (2d) 205; *Cerricola v. Darena,* 266 Mass. 267, 165 N.E. 124;· *De Motte v. Arkell,* 77 Cal. App. 610, 247 Pac. 254; *Price v. Pocahontas Fuel Co.,* 49 F. (2d) 39; *Markussen v. Mengedoht,* 132 Neb. 472, 272 N.W. 241; *Grossenbach v. Devonshire Realty Co.,* 218 Wis. 633, 261 N.W. 742; *Davis v. Edmondson,* 261 Pa. 199, 104 Atl. 582; *Aubrey v. McCarthy,* 217 N.Y.S. 161; *Landers v. Brooks,* 258 Mass. 1, 154 N.E. 265; 52 C.J.S., pp. 26 and 48, §417; 38 Am. Jur., pp. 761 and 880, §§100 and 199.

█ Considering plaintiff's evidence in its most favorable light, defendant's negligence was not established, and this makes it unnecessary for us to consider other specifications of points. It was the duty of the trial court to determine, as a matter of law, that plaintiff's

evidence was insufficient to establish actionable negligence, and, therefore, the motion for a directed verdict should have been granted, and the court's failure so to do constituted reversible error.

Accordingly, the judgment is reversed.

MR. JUSTICE HILLIARD and MR. JUSTICE HAYS concur.