## No. 16,836.

### ATKINSON *v.* IVES.

(255 P. [2d] 749)

Decided March 9, 1953.   Rehearing denied April 13, 1953.

Messrs. WOOD & RIS, Messrs. THURMAN, GREGORY & TAYLOR, for plaintiff in error.

VICTORIA F. GROSS, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

DEFENDANT in error, as plaintiff in the trial court, obtained a judgment on a jury verdict against plaintiff in error, in the sum of $3,122.00 for personal injury received while on defendant's ranch on the claim of simple negligence on the part of defendant. A motion for directed verdict was seasonably made after all the evidence had been introduced, which was denied, as also was a motion to set aside the verdict returned later.

No error is assigned as to any ruling of the trial court on the admission or rejection of evidence, or to the instructions given or refused. Defendant stands squarely on the error claimed in the denial of the motions referred to. We find no conflict in the evidence concerning the

acts of plaintiff or defendant prior to the accident. Only questions of law are here involved, which were submitted to the trial court in the motions there presented.

The controlling question is not whether plaintiff was an "invitee" or a "licensee" on defendant's ranch at the time of the injury, but rather whether or not there is any evidence to establish liability in either event.

Plaintiff alleged that on the 15th day of October, 1949, he was a member of a party of paying guests occupying a detached hunting lodge or cabin on the ranch known as X BAR X, located in Pitkin County and owned by defendant; that defendant maintained a way or approach from the cabin occupied by plaintiff to the main ranch house leading across a patio to a club room, and thence to the dining room of the ranch house, which plaintiff was invited to traverse; that on the date mentioned, the patio was in a negligent, dangerous condition, without lights to illuminate same; that a stone which constituted a portion of the floor of the patio near the stairway leading from the patio had become loosened in the embedding cement; *that the loose stone was not apparent nor discernible;* that about 8:30 o'clock in the evening on said date plaintiff, while crossing the patio and unaware of the loosened condition of the stone, trod upon the loose portion of the patio and was thrown off balance and hurled over the edge of the patio, causing his injury; that said fall was occasioned by the negligent condition existing upon the premises. Defendant answered, admitting the presence of plaintiff on defendant's property, but denying that plaintiff was a paying guest of defendant; denied that he was negligent in maintaining the patio, and in failing to illuminate the same; denies that plaintiff's fall was occasioned by any negligent condition of the premises; as a third defense, alleges that plaintiff was not a guest or invitee of defendant, but was a mere licensee upon the premises of defendant, and defendant therefore is not liable to plaintiff for injury resulting from simple negligence, if any;

and further, that plaintiff contributed to the happening of the accident; and as a fifth defense, alleged that the injuries and damages, if any, resulted solely from an unavoidable accident.

The evidence discloses that defendant was the owner of the ranch in question containing about 1200 acres located on East Sopris Creek south of Glenwood, at an altitude of about 7400 feet, where defendant and his family resided on a year-round basis until about March of 1950. After acquiring the ranch, defendant made some improvements on the two-story log ranch house, among which was a patio which was constructed by building a flagstone wall, and the area between the wall and the house was filled with dirt to a point six inches below the top of the wall, over which a six-inch layer of cement was laid flush with the top of the wall. The outer edge of the cement portion consisted of the top of the rock wall, each rock being embedded in the cement. The flat surface of the porch or "patio" was about eighteen to twenty inches above the level of the ground, and seven and one-half feet wide. This porch was finished in June of 1949 and was used by defendant's family daily in going in and out of the house; that it was the custom of defendant's wife to sweep the patio each day, and the evidence is undisputed that defendant was not aware of the loose stone at the edge of the porch prior to plaintiff's fall on October 15, 1949; that no one had informed him that it was loose; that no one had ever fallen there; and that he was wholly unaware of any defect prior to the fall. Defendant's wife testified that her attention had never been attracted to a loose stone.

It is worthy to note at this point that in paragraph 4 of plaintiff's complaint, is the following allegation: " * * * that the loose stone was not apparent nor discernible." As bearing upon the question of whether plaintiff was an "invitee" or "licensee," if such is vital, a recital of the following substance of the testimony is necessary: It appears that Herbert C. Anderson and

wife, prior to the summer of 1949, had been personal friends of defendant's wife, but not of defendant himself; that the Andersons spent the early part of the summer visiting friends as guests on a ranch near Meeker, Colorado, and thereafter defendant's wife invited them to be guests of the X BAR X ranch owned by defendant; that the invitation was accepted and the Andersons visited the ranch in the latter part of the summer and then returned to their home in Denver; that upon invitation, they returned to the ranch for the purpose of going on a pack trip; that during the balance of the summer and fall the Andersons spent several periods of time at defendant's ranch, going back and forth from their Denver home at their leisure; that defendant was operating a cattle ranch and not a guest or dude ranch; Anderson was never engaged as an employee; never received any salary or wages; visited the ranch, going and coming at his pleasure, and was not interested with defendant in any partnership or joint adventure, and never acquired any interest whatever in the ranch or any part thereof; that while Anderson was visiting on the ranch, he did some work because he wanted to and enjoyed it; that some time prior to plaintiff's accident, Anderson and defendant discussed the possibility of going into the dude ranch business, but there was never anything more than a discussion; at about that time, defendant, invited by Anderson, attended a clam bake in Jarre Canyon near Denver; that during the activities of the clam bake, considerable drinking was indulged, which made conversation easy, and Anderson made inquiries among other guests concerning whether or not they would be interested in staying at the X BAR X Ranch during the big-game hunting season of that fall. There is no evidence that defendant engaged in such discussion, although he was present at times when Anderson was so engaged; that after the clam bake, nothing was ever said between Anderson and defendant concerning the matter of engaging in the operation of a

dude ranch. It appears that defendant had arranged to have his brother and three personal friends as non-paying guests for a hunting party, and they planned to stay at the cow camp a few miles distant from the ranch house. Defendant's wife had planned to visit in Denver during the hunting season. This arrangement would leave the Andersons at the ranch house and it was understood that they could have such guests for the hunting season as they desired. It appears that the Andersons invited another couple, also named Anderson, together with two or three other friends, and plaintiff was in the crowd. It appears that this second Anderson couple paid the Herbert Andersons for the accommodations without the knowledge of defendant, and defendant received nothing from anything that was paid to the Andersons by any of Andersons' guests. The original plan of defendant and his party to stay at the cow camp did not materialize, because the cow camp was otherwise occupied, which resulted in the entire group, which constituted defendant's invited guests and the guests of the Andersons, all staying at the ranch house. It seems that the two different crowds did not have any interests in common and had little to do with each other during the season. There is testimony to the effect that Andersons' guests paid them for such accommodation as they received at the ranch, and that there was some nebulous understanding between defendant and Anderson about sharing the actual proportionate cost of the accommodations; however, whatever this arrangement might have been, the evidence does not disclose that defendant received anything therefrom.

When the Andersons' guests arrived at the ranch, they were shown their cabin by Mr. Anderson; after dinner they retired for the night and awakened about two o'clock the next morning; following breakfast, they went hunting, hoping to "bag" an elk before daylight. This party included plaintiff. They hunted all day; returned to the ranch after dark; and after plaintiff had

two drinks of whiskey, they went to the ranch house, one of the party taking a bottle of whiskey with him, where plaintiff had two more highballs before dinner; he was sixty-eight years of age; was quite weary after an all-day hunt; started to leave the ranch house about nine-thirty o'clock to go to his cabin, and was asked by Mrs. Anderson to take a flash light or wait until she could get one; however, they did not wait and one of the party, preceding in front, caught his heel on the edge of the top step on the flat stone at the edge of the porch, between the porch and the ground, started to fall, but caught himself, and when the heel of his shoe caught on the stone it rocked with him. Plaintiff, following immediately behind this guest, saw the guest start to fall and he made an effort to assist him, but never actually touched him. As he leaned forward to assist him, he said, "I stepped on the loose stone and fell off the porch, striking my right shoulder and breast." After the accident, one of the guests examined the stone and he observed only a tipping or a slight rocking. Plaintiff and his friends had used the route for means of access each time in going to and from the ranch house.

At the close of the evidence, motion was made for directed verdict on the ground that defendant was not guilty of negligence as a matter of law, because plaintiff was not an "invitee" but a mere "licensee," and further that plaintiff was contributorily negligent.

At the trial, plaintiff apparently abandoned the question of the lighting or illuminating of the patio; has not taken the position that defendant was an insurer of plaintiff's safety; and seemed to stand alone on the allegations of simple negligence.

■■■■ If plaintiff was an "invitee" which the evidence does not clearly support, then defendant owed him no duty concerning dangers that were unknown to defendant, or of which he could not have become aware in the exercise of ordinary care. To be an invitee, plaintiff would have to be on defendant's property by invitation,

express or implied, for some purpose of interest or advantage to defendant. If he was on the ranch by the tolerance or the permission of defendant and was not there for some purpose of interest or advantage to defendant, then he was a mere "licensee." As a "licensee" he took the premises as he found them, the owner being under no further obligation than to refrain from wilfully and intentionally injuring him, and to use reasonable care after being aware of his presence, not to do something that would injure him.

In either event it is undisputed that defendant did not know of any defective or loosened condition of the stone on the floor of the patio which plaintiff claims caused the accident resulting in his injury. If plaintiff was an "invitee," defendant violated his duty toward him if he negligently allowed a condition to exist on the ranch property which would imperil plaintiff's safety. Where there is no evidence of the existence of a faulty condition prior to the accident, it follows there is no violation of defendant's duty and consequently, no liability attached. There is absolutely no evidence, direct or circumstantial, that the stone was loose before the happening of the accident. The very basis for liability for negligence under such circumstances is knowledge, without which, negligence cannot be charged. He was not required to guard against a danger of which he had no knowledge or concerning which no knowledge could be imputed to him.

■ ■ Since the vital questions of fact here involved are not in dispute, we feel at liberty to step aside from the generally established practice of not disturbing the findings of fact by a jury. Determination of the question whether plaintiff was an "invitee" or "licensee" is not necessary, because of the lack of evidence to establish any liability of defendant in either event. The burden to establish facts necessary to support liability was on plaintiff, which he failed to meet. We are therefore of the opinion that the trial court erred in denying the

motion for a directed verdict on the grounds before indicated.

The judgment is reversed and the cause remanded with directions to set aside the verdict and judgment and dismiss the complaint.