No. C-31.

MILE HIGH FENCE COMPANY *v.* WALTER RADOVICH.
(489 P.2d 308)

Decided September 20, 1971.

SHELDON, BAYER, McLEAN & GLASMAN, GEORGE M. ALLEN for petitioner.

BRUNO and BRUNO, H. D. REED, for respondent.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

PETITION for Writ of Certiorari was granted in this case to review the decision of the Colorado Court of Appeals affirming the trial court, *Mile High Fence Co. v. Radovich*, 28 Colo. App. 400, 474 P.2d 796.

The pertinent facts are: At approximately 11:00 p.m. on February 23, 1966, Radovich, a police officer, was conducting a surveillance of a known prostitute and her prospective customer. In so doing, Radovich was walking down an alley abutting property on which Mile High Fence Company (the Company) was constructing a fence. While walking down the alley, Radovich stepped into a post hole dug by the Company and broke his left leg at the knee. The post hole was located on private property seven inches from the edge of the paved portion of the alley and was the only post hole of several which had been dug in connection with the construction of the new fence that did not have a post set in it. The Company had not installed warning lights, barricades,

or other protective devices, but the area was indirectly lighted by background lights sufficient to enable Radovich to see the posts along the alley but not the post holes.

Radovich recovered a judgment for damages for the injuries he sustained. Trial was to the court without a jury. The trial court held that the Company was negligent in creating a hazardous condition which proximately caused Radovich's injuries. We affirm that judgment.

The Company sought review alleging as error, first, that Radovich entered the property as a licensee, and, therefore, the Company owed no duty to protect him, and second, that the trial court should have found Radovich contributorily negligent, as a matter of law, for failure to use his flashlight.

The Court of Appeals, in disposing of the first assignment of error, stated:

"An entrant's status as 'trespasser,' 'licensee,' or 'invitee' is no longer controlling, but only one element among many to be considered in determining the landowner's liability under ordinary standards of negligence, with the duty required of the landowner (or the person charged with responsibility for the condition of the land, as in this case) being no more or no less than that of any other alleged tort-feasor: he must conduct himself as a reasonable man under the circumstances, on land which he controls as well as in other places."

After concluding that this determination is a question for the finder of fact, the court continued:

"Even though the above categories are a factor which the finder of fact should still consider, the principal question should not be, 'In what category shall we place the injured person?' but rather, 'Did the owner (or party responsible for the particular condition of the premises) act as a reasonable person in view of the probability of injury to persons entering upon the property?' "

The Court of Appeals, in concluding that the classifications of *trespasser, licensee,* and *invitee* are no longer

controlling, relied primarily on *Kenney v. Grice,* 171 Colo. 185, 465 P.2d 401.

As to the alleged error concerning contributory negligence, the Court of Appeals held that the trial court correctly applied the law, stating that this was basically an issue of fact, and that only in the case of extenuating circumstances will an appellate court determine contributory negligence as a matter of law.

The Company filed a petition for rehearing. The Court of Appeals denied the petition, Judge Dufford dissenting.

Judge Dufford stated that while he agreed with the substantive result reached in the opinion, he felt it confused the state of the law, saying:

"For what is now a long period of time, our Supreme Court, in measuring the duty of care owed to other parties by the owner of premises, has made status classifications based upon whether the other party was a trespasser, a licensee, or an invitee. The Colorado Jury Instructions, which were prepared as of September 1, 1968, by our Supreme Court's Committee on Civil Jury Instructions, includes nine instructions which relate to such status classifications. By its decision in *Kenney v. Grice,* 171 Colo. 185, 465 P.2d 401, our Supreme Court strongly indicated an intent to abolish the status classifications and to overrule its prior decisions which created such classifications. However, *Kenney v. Grice, supra,* does not overrule such cases, nor does it abolish such classifications. Colorado law on this question is therefore unclear at this point in time."

*Kenney v. Grice, supra,* involved the duty of a home owner toward a social guest. In *Kenney,* the defendants urged that the proper standard of care owed the plaintiff was that owed to a *licensee;* whereas, the plaintiff contended that she was entitled to be classified as an *invitee.*

Mr. Justice Day, in *Kenney,* observed:

"In the case of a social guest it has been said: 'Here is an invitee who is not an invitee.' *See* 2 Harper & James, *The Law of Torts,* § 27.11 at 1476. Generally social guests

have been classified as licensees. 2 *Restatement of Torts* 2d, § 330 at 175."

Under prior Colorado law social guests have been held to be licensees. *Atkinson v. Ives,* 127 Colo. 243, 255 P.2d 749. This was noted in *Kenney,* after which Mr. Justice Day concluded:

"However, even if plaintiff were classified as a 'licensee' a *prima facie* case of negligence on the part of defendants was established. In our view the same would also be true were the defendants' liability to be considered in the light of general principles of negligence."

Judge Dufford is correct in his inference that this court "has strongly indicated an intent to abolish the status classifications and to overrule its prior decisions which created such classifications." However, because of the peculiar circumstances of *Kenney,* no well defined policy emerged. Accordingly, here, this court granted certiorari in order to determine whether landowners' duties[1] will continue to turn upon the status of the person injured or whether we shall henceforth require the landowner to meet a standard of reasonable care under all the circumstances.

For reasons which appear below, we have concluded that we can no longer permit a landowner's liability to depend solely upon the status of the plaintiff.

I.

Colorado, like most jurisdictions, has generally followed the common law distinctions between *trespassers, licensees,* and *invitees* in determining the standard of care owed by the occupier of land towards those who come upon the land.[2] However, it is apparent from an

---

[1] That is, landowners' duties or the duties of others responsible for the premises. The landowner is not a party to this litigation — only the contractor. This fact is not material to the consideration of the impact of *Kenney v. Grice, supra,* upon the tort law of this state. The contractor is subject to the same liability, and enjoys the same freedom from liability, as the possessor of land, for physical harm to others entering the land, caused by a dangerous condition while the work is in his charge. 2 *Restatement of Torts* 2d, §§ 383, 384.

examination of our decisions that on occasion we have departed, in the interest of justice, from strict adherence to the common law classifications and the respective duties imposed thereby.[3] In fact, on occasion, this court has·disregarded status and has permitted liability to depend upon a determination of whether the occupant acted as a reasonable man in view of the foreseeability of injury to the entrant.[4] Our departures from status classification took place without reconsideration of the common law rule. This indicates that this court has recognized the problem but has been reluctant to meet it head on. Commentators have suggested . numerous reasons to abandon the system; however, those which now compel this court to act are (1) that the system creates confusion and judicial waste, and (2) that by preventing the jury from applying changing community standards to a landowner's duties, a harshness which is inappropriate to a modern legal system has been preserved.

There can be no better example of the confusion and judicial waste resulting from the common law classifi-

---

[2]*Husser v. School Dist. No. 11,* 159 Colo. 590, 413 P.2d 906; *Colo.-Wyo. Ry. Co. v. Wheelock Bros. Co.,* 155 Colo. 406, 395 P.2d 1; *Staley v. Security Athletic Assoc.,* 152 Colo. 19, 380 P.2d 53; *Nettrour v. J. C. Penney Co.,* 146 Colo. 150, 360 P.2d 964; *Drake v. Lerner Shops,* 145 Colo. 1, 357 P.2d 624; *Field v. Sisters of Mercy,* 126 Colo. 1, 245 P.2d 1167; *Hooker v. Routt Realty Co.,* 102 Colo. 8, 76 P.2d 431; *Gotch v. K. & B. Packing & Provision Co.,* 93 Colo. 276, 25 P.2d 719; *Averch v. Johnston,* 90 Colo. 321, 9 P.2d 291; *Windsor Reservoir & Canal Co., v. Smith,* 82 Colo. 497, 261 P. 872; *Hayko v. Colo. & Utah Coal Co.,* 77 Colo. 143, 235 P. 373; *Lunt v. Post Publishing Co.,* 48 Colo. 316, 110 P. 203; *Watson v. Manitou & Pikes Peak Ry. Co.,* 41 Colo. 138, 92 P. 17.

[3]*Palmer Park Gardens, Inc. v. Potter,* 162 Colo. 178, 425 P.2d 268; *Price v. Central Assembly of God,* 144 Colo. 297, 356 P.2d 240; *Crosby v. Kroeger,* 138 Colo. 55, 330 P.2d 958; *Roessler v. O'Brien,* 119 Colo. 222, 201 P.2d 901; *Krause v. Watson Bros. Transportation Co.,* 119 Colo. 73, 200 P.2d 387; *Averch v. Johnston,* supra; *Florence & Cripple Creek R.R. Co. v. Kerr,* 59 Colo. 539, 151 P. 439; *Catlett v. Colo. & Southern Ry. Co.,* 56 Colo. 463, 139 P. 14; *Richardson v. El Paso Co.,* 51 Colo. 440, 118 P. 982 (1911); *Husser v. School District,* 159 Colo. 590, 413 P.2d 906 (1966).

[4]*Celebrities Bowling, Inc. v. Shattuck,* 160 Colo. 102, 414 P.2d 657; *Krause v. Watson Bros. Trans. Co., supra; Simkins v. Dowis,* 100 Colo. 355, 67 P.2d 627; *Averch v. Johnston, supra.*

cations than *Smith v. Windsor Reservoir & Canal Co.,* 78 Colo. 169, 240 P. 332; 82 Colo. 497, 261 P. 872; 88 Colo. 422, 298 P. 646; 92 Colo. 464, 21 P.2d 1116. This litigation was four times before this court as the result of the common law status classifications.

## II.

Rigid adherence to common law classifications results in the resolution, in many instances, of the owner's liability as a matter of law. Regarding the usurpation of the jury function, one commentator observed:

"The common law classifications often resolve the occupier's liability as a matter of law, whether by summary judgment . . . or by nonsuit or directed verdict. Where such cases do reach the jury, it is often for consideration of the plaintiff's status rather than for the more fundamental question of whether the defendant has acted carelessly. Thus the jury is deprived of the flexibility necessary to allow it to assess the burden of liability on the facts of each case in accord with community standards." 44 N.Y.U.L.R. 426, 430 (1969).

In Colorado, determination, without benefit of jury, has been the rule rather than the exception.

Thus, trial court determinations that the plaintiff was a trespasser rather than a licensee,[5] or a licensee rather than an invitee,[6] have kept the injured party from having

[5] *Catlett v. Colo. & Southern Ry. Co.,* 56 Colo. 463, 139 P. 14 (1914); *Hayko v. Colo. & Utah Coal Co.,* 77 Colo. 143, 235 P. 373 (1925); *Smith v. Windsor Reservoir & Canal Co.,* 78 Colo. 169, 240 P. 332 (1925); *Smith v. Windsor Reservoir & Canal Co.,* 88 Colo. 422, 298 P. 646 (1931); *Simkins v. Dowis,* 100 Colo. 355, 67 P.2d 627 (1937); *Krause v. Watson Bros. Transportation Co.,* 119 Colo. 73, 200 P.2d 387 (1948); *Staley v. Security Athletic Assn.,* 152 Colo. 19, 380 P.2d 53 (1963); *Dunbar v. Olivieri,* 97 Colo. 381, 50 P.2d 64 (1935); *Esquibel v. Denver,* 112 Colo. 546, 151 P.2d 757 (1944); *Richardson v. El Paso Co.,* 51 Colo. 440, 118 P. 982 (1911).

[6] *Watson v. Manitou & Pikes Peak Railway Co.,* 41 Colo. 138, 92 P. 17 (1907); *Lunt v. Post Printing & Publishing,* 48 Colo. 316, 110 P. 203 (1910); *Gotch v. K. & B. Packing Co.,* 93 Colo. 276, 25 P.2d 719 (1933); *Hooker v. Routt Realty Co.,* 102 Colo. 8, 76 P.2d 431 (1938); *Field v. Sisters of Mercy,* 126 Colo. 1, 245 P.2d 1167 (1952); *Mathias v. Denver Union Terminal Ry. Co.,* 137 Colo. 224, 323 P.2d 624 (1958); *Price v. Central Assembly of God,* 144 Colo. 297, 356 P.2d 240 (1960); *Husser v. School Dist.,* 159 Colo. 590, 413 P.2d 906 (1966).

a jury determination on the issue of negligence. Similarly, where a trespassing child has been injured, court conclusions as to the unusualness or the attractiveness of the features of the land have prevented jury consideration of the defendant's activities.[7] Where verdicts have been rendered, they have been overturned either because this court has characterized the plaintiff differently from the trial court[8] or because the classifications covered by the jury instructions would not support the verdict rendered.[9]

The harsh effect of this immunity can best be demonstrated by a discussion of the facts involved in the cases. Defendant places primary reliance on *Lunt v. Post Printing & Publishing Co.*, 48 Colo. 316, 110 P. 203 (1910), and *Gotch v. K. & B. Packing & Provision Co.*, 93 Colo. 276, 25 P.2d 719 (1933).

*Lunt* defined a common law licensee and a common law invitee and the duties owed to each.[10] This case involved a fireman[11] who answered defendant's alarm to extinguish what mistakenly appeared to be a fire and died from the inhalation of nitric acid fumes. The court concluded that since Lunt was under a public duty to extinguish a fire regardless of defendant's actions, his status was that of a licensee rather than an invitee.

[7]*Hayko v. Colo. & Utah Coal Co.*, 77 Colo. 143, 235 P. 373 (1925); *Krause v. Watson Bros. Trans. Co.*, 119 Colo. 73, 200 P.2d 387 (1948); *Staley v. Security Athletic Assn.*, 152 Colo. 19, 380 P.2d 53 (1963); *Dunbar v. Olivieri*, 97 Colo. 381, 50 P.2d 64 (1935); *Esquibel v. Denver*, 112 Colo. 546, 151 P.2d 757 (1944); *Richardson v. El Paso Co.*, 51 Colo. 440, 118 P. 982 (1911).

[8]*Roessler v. O'Brien*, 119 Colo. 222, 201 P.2d 901 (1949); *Atkinson v. Ives*, 127 Colo. 243, 255 P.2d 749 (1953); *Swerdfeger v. Krueger*, 145 Colo. 180, 358 P.2d 479 (1960).

[9]*Windsor Res. & Canal Co. v. Smith*, 82 Colo. 497, 261 P. 872 (1927).

[10]*Mathias v. Denver Union Terminal Ry. Co.*, 137 Colo. 224, 323 P.2d 624; *Roessler v. O'Brien*, 119 Colo. 222, 201 P.2d 901; *Gotch v. K. & B. Packing & Provision Co.*, see Note 2. *Windsor R. & C. Co. v. Smith*, 82 Colo. 497, 261 P. 872; *Union Depot Co. v. Londoner*, 50 Colo. 22, 114 P. 316.

[11]The parties recognize that there is no distinction in *status* between firemen and policemen entering private property in the course of the performance of their duties. *See* W. Prosser, *Torts 405-08* (3d Ed. 1964).

Accordingly, he took the premises as he found them and neither the court nor the jury ever considered whether or not defendant had a duty to warn him of the presence of nitric acid.

*Gotch* is a case which describes the common law duties to a licensee or trespasser.[12] In that case, plaintiff's wife walked into an open elevator shaft while delivering lunch to her son, defendant's employee. Though the shaft was unguarded, contrary to city ordinance, the court found that Mrs. Gotch, being either a trespasser or a "mere" licensee, was not entitled to the protection of the ordinance.

Many of the other Colorado cases in this area show a similar harshness due to the status classification system. *Hayko v. Colorado and Utah Coal Co.*, 77 Colo. 143, 235 P. 373 (1925) involved a 10-year-old boy who entered an open shack on the defendant's premises. The shack contained a box of dynamite caps which exploded and blew off parts of several fingers. The court concluded that the plaintiff was a trespasser, that the shack was not such an unusual feature of the land as would invite the trespass, and therefore, a directed verdict for the defendant was affirmed. Whether or not defendant's placement and manner of keeping of dynamite was reasonable was never discussed.

*Dunbar v. Olivieri*, 97 Colo. 381, 50 P.2d 64 (1935) involved a 9-year-old boy who became a permanent and incurable cripple due to injuries sustained while playing around a bonfire in an open lot. Though the bonfire was in contravention of city ordinance, the court, concluding that plaintiff was a trespasser and that a fire was not an attractive nuisance, affirmed the trial court's dismissal.

In *Hooker v. Routt Realty Co.*, 102 Colo. 8, 76 P.2d 431 (1938), the plaintiff fell down an unlighted and

[12]*Roessler v. O'Brien*, 119 Colo. 222, 201 P.2d 901; *Colorado Springs v. Colburn*, 102 Colo. 483, 81 P.2d 397; *Hooker v. Routt Realty Co.*, 102 Colo. 8, 76 P.2d 431.

unguarded stairway in a passageway leading to business premises owned by the defendant. The court, noting that the accident occurred after business hours, concluded that the plaintiff could not assert the status of invitee and accordingly, the trial court's dismissal was affirmed. Neither court considered whether defendant's lack of safeguards was reasonable.

## III.

Because of the harsh consequences and judicial waste which have resulted from adherence to status classification, this court takes today's action. We draw support for this change in direction from a reading of the law which suggests that plaintiff's status should no longer be dispositive of a landowner's liability.

In *Kenney v. Grice, supra,* as pointed out above, we held that even if the plaintiff was classified as a *licensee,* the defendant's liability was a question for the jury; and that the same would be true "were the defendant's liability to be considered in the light of general principles of negligence."

In effect, we held that *status* was not determinative. On this issue the court concluded:

"* * *[a]pplying to this case the test in *Rowland v. Christian* [69 Cal.2d 108, 443 P.2d 561 (1970)], would pose this question, 'Did Mrs. Kenney in the management of the property owned by herself and her husband act as a reasonable person in view of the probability of injury to Mrs. Grice?' "

In support of the proposition that the "general principles of negligence" would establish a *prima facie* case in *Kenney,* the court cited 2 *Restatement of Torts* 2d, §342, relating to "Dangerous Conditions Known to Possessor."

2 *Restatement of Torts* 2d, *General Liability of Possessors of Land to Licensees and Invitees* (§§340-341A) on first blush indicates an incompatibility between *Rowland* and *Kenney* on one hand and the *Restatement* on the other. However, on analysis of Ch. 13, *Liability for Con-*

*dition and Use of Land* (especially §§340-341A, 342, 345(1), 345(2), 364, and 368), such does not appear to be the case. This is so because the basic theme running through the *Restatement* is that the possessor of land is liable to a person whether *licensee* or *invitee* or even *trespasser* for his negligence if (1) he knows of the condition, (2) knows that it involves an unreasonable risk of harm to a person, and (3) fails to take reasonable precaution to correct it. Whatever qualifications or modifications there are to the several rules in the *Restatement,* they bear on the reasonable man standard, and they fall within the scope of the *Rowland* rule, which we repeat: "* * * whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others, and, although the plaintiff's status as a trespasser, licensee, or invitee may in the light of the facts giving rise to such status have some bearing on the question of liability, the status is not determinative."

It becomes obvious from an in-depth analysis of the various sections and comments of the *Restatement,* that status, particularly that of licensee or invitee, is not the controlling determinant of liability. Again it is the *foreseeability* of harm from the failure by the possessor to carry on his activities with reasonable care for the safety of the entrants which determines liability.

In short, as we read the *Restatement,* even where the status of the entrant is a factor to be considered in the determination of a possessor's liability for harm to an entrant, it is not controlling. With this understanding of the *Restatement,* we find the quoted sections compatible with the *Rowland* rule and the rule we are adopting in this opinion, and adopt it as a guide for determination of the duties of possessors of land towards those who may enter. *Kenney v. Grice,* 171 Colo. 185, 465 P.2d 401; *Rowland v. Christian,* 69 Cal.2d 108, 443 P.2d 561; *Taylor v. New Jersey Highway Authority,* 22 N.J. 454, 126 A.2d 313; *see also Modern Status of Rules Conditioning Landowner's Liability Upon Status of Injured Party as In-*

*vitee, Licensee or Trespasser,* 32 A.L.R. 3d 508, 520; *Notes,* 44 N.Y.U.L.R. 426; *Current Decisions,* 41 U.Colo. L.R. 167.

## IV.

■ In overruling *Lunt* and *Gotch* we do not mean to imply that the plaintiffs were entitled to recover as a matter of law. What we are holding is that *status* or *classification* of one who is upon the property of another is not to be determinative of the occupant's responsibility or the degree of care which he owes to that person. Rather, the occupant, in the management of his property, should act as a reasonable man in view of the probability or foreseeability of injury to others. A person's status as a *trespasser, licensee* or *invitee* may, of course, in the light of the facts giving rise to such status, have some bearing on the question of liability, but it is only a factor — not conclusive. *Kenney v. Grice, supra; Rowland v. Christian, supra.*

■ This traditional tort concept, that is, the probability of injury as foreseen by a reasonable man, was properly applied by the trial court in the instant case. It was, therefore, within the province of the trial court to find and conclude that the Company, in leaving the post hole adjacent to a public way unprotected, could foresee or, by the exercise of reasonable care, should have foreseen, the probability that someone using the alley might inadvertently deviate from the alley, step into the post hole and injure himself. Under these circumstances, the law imposes a duty upon the possessor of land to warn or protect those using the public way from the dangerous condition. Failing to take such action, the possessor becomes liable for the harm caused by its breach of duty.

The judgment is affirmed.