Michael KULIK, Administrator of the Estate of Darrow L. Moline, Deceased, and Carla A. Rivero, Plaintiffs-Appellants,

v.

PUBLIC SERVICE COMPANY OF COLORADO, a Colorado corporation; Bell Plumbing & Heating Company, a Colorado corporation; and Metropolitan Gas Repair Service, Inc., a Colorado Corporation, Defendants-Appellees.

No. 78–237.

Colorado Court of Appeals,
Div. II.

Aug. 16, 1979.

Rehearing Denied Sept. 13, 1979.

Certiorari Granted Dec. 3, 1979.

---

1. Restatement, Conflicts of Laws, section 377.

Walberg & Pryor, John E. Walberg, White & Steele, P.C., James M. Dieterich, Michael W. Anderson, Denver, for plaintiffs-appellants.

Kelly, Stansfield & O'Donnell, Timothy J. Flanagan, Denver, for defendant-appellee Public Service Co. of Colorado.

Burnett, Horan & Hilgers, Myron H. Burnett, Don D. Jacobsen, Mike Hilgers, Denver, for defendant-appellee Bell Plumbing & Heating Co.

Lowell Fortune, P.C., Lowell Fortune, Jeffrey H. Thorpe, Denver, for defendant-appellee Metropolitan Gas Repair Service, Inc.

PIERCE, Judge.

Plaintiffs, Michael Kulik and Carla Rivero, brought this negligence action against defendants, Public Service Company of Col-

orado, Bell Plumbing and Heating Company, and Metropolitan Gas Repair Service. After the trial court granted Metropolitan's motion for a directed verdict, the jury returned general verdicts in favor of the two remaining defendants. Plaintiffs appeal as to all three defendants. We affirm the judgments entered on the verdicts as to Public Service Company and Bell, but reverse the granting of Metropolitan's motion for a directed verdict, and remand the cause for a new trial as to Metropolitan.

In April of 1974, a gas-fired hot water boiler exploded in a home owned by Darrow Moline, causing substantial damage to the house. Mr. Moline subsequently died from an unrelated cause, and plaintiff Kulik, as administrator of Moline's estate, brought this action against defendants for property damage to the house. Moline's stepdaughter, plaintiff Carla Rivero, was living in the home but was not present at the time of the explosion. In order to recover damages to her personal property, she joined in Kulik's action.

Plaintiffs' expert testified that the boiler exploded because the safety relief valve in the system had been plugged and was thereby rendered inoperative. When other parts of the system failed—either the aquastat or the gas valve—the gas burner remained on and steam pressure continued to build in the system until the boiler exploded. Plaintiffs do not contend that defendants were in any way responsible for these other system failures.

There was no evidence indicating who plugged the relief valve, or when, except that it was done sometime before 1971. Plaintiffs' theory of the case was that defendants were negligent by virtue of the fact that their repairmen, between May and November of 1971, visited the Moline residence to make repairs on the heating system, yet failed to observe the plugged safety valve.

A Public Service Company employee testified that he responded to a "fire call" at the Moline home in May of 1971. The burners on the boiler were out of adjustment and were sooting, and the floor beneath them caught on fire. The serviceman inspected the burners and "red tagged" the system; that is, he shut the system down and directed that it remain off until the burners had been cleaned and adjusted.

A serviceman from defendant Bell Plumbing and Heating Company testified that he was called to the Moline home several days later to perform these tasks. After adjusting the burner and cleaning the soot from the boiler, he checked the system controls and removed the red tag.

In October of 1971, a second Public Service employee responded to a "no heat" call at the Moline home. He testified that he inspected and oiled the circulator pump motor, and then left when the pump motor appeared to be functioning normally.

Later, the motor apparently failed, and an employee of defendant Metropolitan testified that he was called to replace it. The Metropolitan repairman noted on his repair order that he had "check[ed] boiler."

Each of the four servicemen—two from Public Service Company and one each from Bell and Metropolitan—testified that their usual procedure for any boiler system call would be to at least visually check the safety relief valve. They also all testified that had they seen a plugged valve like the one recovered from the explosion, they would have immediately shut off the system and warned the homeowner. However, none of them could recall seeing the plugged valve when they made their service calls at the Moline home.

Defendants' expert testified that even if the relief valve had not been plugged, the explosion would still have occurred since the valve was designed to relieve low-level hydrostatic pressures and not the kind of extreme steam pressures which, in his opinion, must have caused the explosion.

## I.

Relying on *Lembke Plumbing & Heating v. Hayutin*, 148 Colo. 334, 366 P.2d 673 (1961), and *Roessler v. O'Brien*, 119 Colo. 222, 201 P.2d 901 (1949), the trial court granted Metropolitan's motion for a direct-

ed verdict, ruling that Metropolitan's duty toward plaintiffs was contractually limited to installing the new pump motor, and could not, as a matter of law, be extended to inspecting the boiler's safety systems. We hold that the trial court erred in so ruling.

■ It is true that where there is no duty there can be no actionable negligence, and that the question of whether a particular defendant owes a duty to a particular plaintiff is a question of law. *Roessler, supra; Baird v. Power Rental Equipment, Inc.*, 35 Colo.App. 299, 533 P.2d 941 (1975). However, once the existence of a duty is established, the particular scope of that duty is a question for the trier of fact. *See, e. g., Fowler Real Estate Co. v. Ranke*, 181 Colo. 115, 507 P.2d 854 (1973); *Barker v. Colorado-Region Sports Car Club of America, Inc.*, 35 Colo.App. 73, 532 P.2d 372 (1974).

■ Here, Metropolitan's contractual relationship with plaintiffs gave raise to a common law duty on Metropolitan's part to perform its work with care, skill and faithfulness. *Samuelson v. Chutich*, 187 Colo. 155, 529 P.2d 631 (1974); *Lembke, supra. See Driscoll v. Columbia Realty-Woodland Park Co.*, Colo.App., 590 P.2d 73 (1978). Whether that duty was breached when Metropolitan's employee failed to observe the plugged safety valve was a question for the jury, and the trial court erred when it took that question from them. *See generally* Annot., 72 A.L.R.2d 865 § 8 (1960).

## II.

Plaintiffs also argue, with respect to their claims against defendants Public Service Company and Bell, that the trial court made various errors in instructing the jury. We disagree.

■ The court defined negligence using *Colo.J.I.* 9:2, giving only the parenthesized phrase dealing with property damage. Plaintiffs tendered an identical instruction, but included the phrase concerning bodily injury. Since there was no evidence of bodily injury, the trial court properly refused plaintiffs' tendered version. *See Houser*

*v. Eckhardt*, 168 Colo. 226, 450 P.2d 664 (1969); *Polster v. Griff's of America, Inc.*, 34 Colo.App. 161, 525 P.2d 1179 (1974).

■ Plaintiffs also tendered an instruction which stated that the degree of care required of defendants increases as the danger increases. The trial court refused the tendered instruction, instead instructing the jury that defendants owed plaintiffs the duty to exercise reasonable care. The court further instructed the jury, according to *Colo.J.I.* 9:3, that reasonable care is that degree of care required of a reasonable person under the same or similar circumstances.

Plaintiffs contend that their tendered instruction is mandated by *Federal Insurance Co. v. Public Service Co.*, Colo., 570 P.2d 239 (1977), in which the Supreme Court ruled that electric utilities owe their customers "the highest degree of care" rather than the ordinary duty of care. However, *Federal Service* is neither dispositive nor analogous.

By its own terms, the *Federal Service* case is limited to the transmission of electricity, a phenomenon the Court described as "a silent, deadly, and instantaneous force." Even were we to accept plaintiffs' proposition that transmitters of natural gas should be held to the same high standard of care as transmitters of electricity, plaintiffs' tendered instruction would still be improper. There was no evidence presented linking the accident to any breakdown or error in the *transmission* of the gas. The problem was in the boiler system itself, a problem which would have existed regardless of the energy source used to run the boiler or the equipment by which it was transmitted. *Cf. Federal Service, supra.*

■ Plaintiffs also argue that the trial court erred when it instructed the jury on the question of intervening causes. However, the evidence raised a number of potential intervening causes, including the possibility that when someone (presumably Moline) brazed a connecting nipple to the safety relief valve, the valve was rendered inoperable and would not have functioned

even if it had not been plugged. Under these circumstances, the trial court was correct in instructing the jury on intervening causes. See *Calkins v. Albi*, 163 Colo. 370, 431 P.2d 17 (1967); *Bradford v. Bendix-Westinghouse Automotive Air Brake Co.*, 33 Colo.App. 99, 517 P.2d 406 (1973).

### III.

Finally, plaintiffs argue that the trial court erred in refusing to admit certain portions of the Lakewood Building Code into evidence, and in preventing plaintiffs' expert witness from testifying about those portions. We find no reversible error.

Plaintiffs tendered this evidence for the purpose of establishing a standard of care in the industry. However, the trial court found that the proffered sections of the Code dealt only with the *construction* of boiler systems and not with their inspection and maintenance, and therefore excluded the evidence as irrelevant.

This decision was made during an untranscribed hearing on defendant Public Service Company's motion in limine. Because the Lakewood Building Code was not made part of the record, and because we may not take judicial notice of it, *see City of Pueblo v. Murphy*, 189 Colo. 559, 542 P.2d 1288 (1975), we are unable to address the merits of plaintiffs' evidentiary argument on this point. See *Rueckhaus v. Snow*, 167 Colo. 51, 445 P.2d 577 (1968).

### IV.

The judgment granting defendant Metropolitan's motion for a directed verdict is reversed, and the cause is remanded for a new trial as to Metropolitan. The balance of the judgment is affirmed.

ENOCH, C. J., and SMITH, J., concur.